

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| RAFAEL GONZALEZ-NOYOLA, ) | |
| ) | |
| v. ) | C.A. No. B-01-058 |
| ) | |
| E.M. TROMINSKI, INS DISTRICT ) | |
|     DIRECTOR, and ) | |
| JOHN ASHCROFT, UNITED STATES ) | |
|     ATTORNEY GENERAL. ) | |

POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS,
APPLICATION FOR TEMPORARY RESTRAINING ORDER,
AND MOTION FOR PRELIMINARY INJUNCTION

Comes Petitioner, through the undersigned, and respectfully files the instant points and authorities, in support of his petition for a writ of habeas corpus, his application for a temporary restraining order, and his motion for a preliminary injunction.

As recently reiterated in *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047 (5th Cir. 1997), preliminary relief should only be granted where the movant demonstrates substantial likelihood of success on the merits, a substantial threat of irreparable harm if such relief is not granted, that the threatened injury outweighs any harm that may result to the opposing party, and that such an action will not undermine the public interest. These elements are present herein.

I. LIKELIHOOD OF SUCCESS ON THE MERITS

The constitutionality of 8 U.S.C. §1226(c) has been the subject of extensive litigation, and the great majority of courts which have examined the issue have concluded that, particularly as applied to lawful permanent residents, it violates both substantive, and

procedural, Due Process.[1] *See, for example, Cardoso v. Reno*, 127 F.Supp.2d 106 (D.Conn.2001) (statute permitting INS to detain indefinitely lawful permanent resident alien who was deportable, but not yet subject to administratively final order of removal and who was eligible for discretionary relief, without first conducting individualized bail hearing to carefully assess her risk of flight and criminal recidivism, was not narrowly tailored, and thus, as applied, violated alien's substantive due process right to be free of arbitrary confinement pending completion of deportation proceedings); *Radoncic v. Zemski*, 121 F.Supp2d 814 (E.D.Pa. 2000) (indefinite detention of an alien pending removal proceedings implicated a fundamental liberty interest, and denied alien's due process rights); *Koita et al v. Reno*, 113 F.Supp.2d 737 (M.D.Pa. 2000) (mandatory detention requirement violated aliens' substantive due process rights); *Son Vo v. Greene*, 109 F.Supp.2d 1281 (D.Colo.

---

[1] Almost without exception, the cases holding that mandatory detention is **not** unconstitutional involved immigrants for whom there was no possibility of relief from removal, and who were therefore only attempting to "postpone the inevitable." *See, e.g., Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999), involving a person "held without possibility of bail pending removal as an aggravated felon." *Parra* therefore did not address whether mandatory detention would be constitutional as applied in circumstances such as are presented herein. Nor did it involve 8 C.F.R. §3.19(i), providing for an "automatic stay" of an Immigration Judge's order releasing an LPR to whom relief had been granted, pending an appeal by INS. *See also, Reyes v. Underdown*, 73 F.Supp. 653 (W.D.La.1999) (mandatory detention of alien convicted of two counts of conspiracy to possess with intent to distribute controlled substances pending conclusion of removal proceeding did not violate his substantive due process rights, and denial of bond hearing was not a violation of procedural due process; provision of additional procedural safeguards would be burdensome to the government and of little value to alien whose removal was a virtual certainty given that such aliens are entitled to little, if any, relief from removal). *But see, Okeke v. Underdown*, 73 F.Supp.2d 635 (W.D.Tx.2000), finding the mandatory detention provisions to be constitutional. No appeal to the Fifth Circuit was taken in that case.

2

2000) (Statute requiring that criminal aliens in deportation proceedings be detained without bond hearing violated substantive due process rights of permanent resident who had reasonable chance of success on claim that he was not aggravated felon); *Small v. Reno,* 127 F.Supp.2d 305 (D. Conn.2000) (mandatory detention provisions of IIRIRA violated substantive due process as applied, and application of mandatory detention provision without a bond hearing, while request for a waiver of removal was pending, violated alien's right to procedural due process); *Welch v. Reno*, 101 F.Supp.2d 347 (D.Md.2000) (Given the liberty interest involved and lack of safeguards, statute allowing government to take into custody aliens who have committed certain offenses without granting alien a bail review hearing was excessive in relation to its purpose and, therefore, violative of alien's substantive due process rights.); *Danh v. Demore,* 59 F.Supp.2d 994 (N.D.Ca.1999) (mandatory detention provisions violated substantive due process as applied to resident aliens, and challenged provision violated procedural due process rights of resident aliens); *Rogowski v. Reno,* 94 F.Supp.2d 177 (D.Conn.1999) (mandatory detention of lawful permanent resident violated his substantive due process rights; alien had a liberty interest in freedom from arbitrary confinement and was entitled to an opportunity to demonstrate his claim to bail); *Bouayad v. Holmes,* 74 F.Supp.2d 471 (E.D.Pa. 1999) (mandatory detention of alien pending removal proceeding unconstitutionally abridged alien's fundamental right to liberty under due process clause); *Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Ore.1999) (provision mandating detention, without requiring bail hearing, of all aliens convicted of certain crimes was not sufficiently narrowly tailored to serve government's compelling interest in preventing aliens with felony convictions from absconding, and thus violated substantive due process; individual bond hearings would serve government's interest without violating due process); and *Martinez et al v. Greene,* 28 F.Supp.2d 1275

3

(D.Colo.1998) (statute requiring that criminal aliens detained for deportation proceedings be held without bond pending determination of deportability violated, on its face, constitutional right to due process of law).[2]

Perhaps the most clearly on point of the cases examining this issue is *Juarez-Vasquez v. Holmes,* 2000 WL 1705775 (E.D.Pa.2000), because, like the case at bar, it also involves the "automatic stay" provisions of 8 C.F.R. §3.19(i)(2).[3] The petitioner in that case, also a lawful permanent resident, had been convicted four times of driving while intoxicated. While in detention for this offense, INS lodged a detainer against him, and upon completion of his criminal sentence, took him into custody, alleging that he was deportable for having been convicted of an aggravated felony, in that his felony DWI convictions constituted crimes of violence within the meaning of 8 U.S.C. §1101(a)(43)(F).

---

[2] *See also, Tiv et al v. Reno,* 2000 WL 246252 (N.D.Ill.2000) (denying INS' motion to dismiss, and reserving constitutional questions for later consideration).

[3] Said section provides, in relevant part, as follows:

(2)--Automatic stay in certain cases.
If an alien is subject to ... section 236(c)(1) of the Act (as designated on April 1, 1997), and the district director has denied the alien's request for release or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon the Service's filing of a Notice of Service Intent to Appeal Custody Redetermination (Form EOIR-43) with the Immigration Court on the day the order is issued, and shall remain in abeyance pending decision of the appeal by the Board of Immigration Appeals. ...

Not only does this section suffer from the same infirmities as §236(c) [8 U.S.C. §1226(c)], discussed above, but it does not enjoy any statutory basis.

4

An Immigration Judge disagreed, and ordered that removal proceedings be terminated, and that he be released. INS filed for an automatic stay, under 8 C.F.R. §3.19(i)(2), and the petition sought relief in habeas corpus. In granting that petition, and ordering an "individualized" custody hearing (such as has already been conducted in the case at bar), the Court reasoned as follows, *Juarez-Vasquez, supra,* at *1 and *2:

> We need not address the issues of whether petitioner's conviction for drunk driving satisfies the definition of a "crime of violence". That is a question to be answered by the BIA in the first instance and the Court of Appeals thereafter. The sole question we must address is whether petitioner's confinement without an individualized evaluation of the petitioner's detention is constitutionally permissible. We find the answer to this question is no.
>
> It is well established that aliens have due process rights under the 5th Amendment. *See Reno v. Flores*, 507 U.S. 292, 306 (1993); *Chi Thon Ngo v. INS*, 192 F.3d 390, 396 (3d Cir.1999). Congress, however, has broad power over immigration and may make rules the would be unacceptable if applied to citizens. Id. at 395-6. The question of whether the mandatory detention provision for deportable aliens violate the aliens' due process rights has not been addressed by our Court of Appeals and has not been answered uniformly by the district courts. *Compare Bouayad v. Holmes*, 74 F.Supp.2d 471 (E.D.Pa.1999) (mandatory detention provision unconstitutional) and cases cited therein with *Diaz-Zaldierna v. Fasano*, 43 F.Supp.2d 1114, 1118-21 (S.D.Cal.1999) (mandatory detention provision constitutional). The only Court of Appeals decision to have addressed the issue, *Parra v. Perryman*, 172 F.3d 954 (7th Cir.1999) upheld the constitutionality of mandatory detention for aggravated felons about to be deported reasoning that persons subject to § 1226(c) have forfeited any legal entitlement to remain in the United States and can unilaterally end their confinement at any time by returning to their native land. Id. at 958.
>
> Our own Court of Appeals has addressed the related issue

5

of when an excludable alien aggravated felon, as opposed to a deportable alien aggravated felon, may be mandatorily detained. In *Chi Thon Ngo,* the Court held that such an excludable alien may be detained indefinitely when his removal is beyond the control if the INS, provided that appropriate provisions for parole are available. *Id.* at 398. The Third Circuit's concern in *Chi Thon Ngo* that parole be available to excludable aliens arose from the fact that such persons may be detained indefinitely due to the circumstances specific to that group. An excludable alien is one who must be deported but, because of the lack of diplomatic relations, the United States is unable to repatriate him, or whose native land will not take him back. Such an alien is literally in a legal limbo; his only hope for eventual release is parole within the United States.

No such provisions for parole are provided in § 1226(c), and given the provision of the automatic stay, petitioner has received no individualized evaluation of his detention. We find that a person in petitioner's position, adjudged by the IJ not to be deportable but because of the automatic stay may not gain his freedom pending the conclusion of the INS appeal is in a legal limbo similar to that of the excludable alien in *Chi Thon Ngo*. While petitioner will in time eventually be either deported or released, there is nothing in the automatic stay provision of 8 CFR § 3.19(I) to limit to the time the BIA takes to resolve the appeal. Coupled to the unavailability of having the stay order reviewed, petitioner's liberty interests are in a state of suspended animation.

We recognize that petitioner does not possess an absolute right to his liberty because Congress is within its power to detain aliens during the pendency of removal proceedings. However, because § 1226(c) imposes an absolute restriction upon petitioner's liberty and does not permit any possibility of a detention hearing where his risk of flight and risk to the community would be individually evaluated, we find that habeas relief is appropriate. Utilizing the same procedure used by Judge Katz in *Bouayad,* we will make the grant of habeas relief conditional upon the government granting him a hearing to determine whether his continued detention is necessary to prevent the risk of flight or danger to the community.

6

The Fifth Circuit has not yet had the occasion to examine this issue. But even the decision in *Zadvydas v. Underdown,* 185 F.3d 279 (5th Cir. 1999), *cert. granted,* 121 S.Ct. 297 (2000) (MEM), gives reason to believe that they would not necessarily reject such a claim. *Zadvydas* is remarkably similar to the Third Circuit decision in *Chi Thon Ngo,* discussed in *Juarez-Vasquez, supra,* and is, in fact, one of the cases upon which the Third Circuit relied therein. *See,* 192 F.3d at 395. The primary difference, which also accounts for the different results in the two cases, is that procedures were in place for periodic custody reviews of the type of detention involved in *Zadvydas,* but no such procedures were available to the detainee in *Chi Thon Ngo.*

*Zadvydas* involved a claim that the indefinite detention provisions violated Due Process. The Fifth Circuit rejected that claim, holding that such detention did not violate his due process rights, given that reasonable procedures existed for his parole and periodic review of his detention, and the possibilities of attaining citizenship in Lithuania, Germany, or Russia had not been exhausted. From this, one can infer that a different result would have obtained, if no such procedures existed, and/or if his statelessness were undisputed and permanent. Furthermore, the Court took pains to point out that the immigrant involved therein had lost his status as a lawful permanent resident, and had absolutely no claim of right to remain in the United States.

In addition, Mr. Gonzalez has an exceptionally strong Equal Protection claim. As previously noted, the undersigned has located **no** case where a court upheld a decision by INS to continue to detain a lawful permanent resident, allegedly under the "mandatory detention" provisions of 8 U.S.C. §1226(c), **after** that person had been granted discretionary relief by an Immigration Judge, and in the face of an Order by that Immigration Judge that he be released

on his own recognizance. In fact, the undersigned has located no case where INS continued to physically detain the immigrant under such circumstances. To the contrary, in *Tiv et al v. Reno, supra,* at *3, it was noted that INS had released Juan Mireles, one of the petitioners therein, an LPR who had been held pursuant to mandatory detention, after he was granted cancellation of removal by Immigration Judge, while INS appealed IJ's ruling that he had not been convicted of an aggravated felony. This is exactly the procedural posture of the case at bar, and presents a classic example of an Equal Protection violation. [4]

It is therefore respectfully submitted that Mr. Gonzalez has shown an extremely high chance of success on the merits of his claim that, as applied herein mandatory detention violates substantive and procedural due process, as well as Equal Protection.

## II. OTHER REQUIRED ELEMENTS FOR PRELIMINARY RELIEF

The other elements which Mr. Gonzalez must demonstrate in order to be entitled to preliminary relief should be even less contentious. There is a substantial threat of irreparable harm if relief is not granted. The appeal to the BIA could take months, if not years. Being detained, unjustly, for such a protracted period is, in and of itself, irreparable harm. Moreover, it is highly likely that, rather than face such protracted, and indefinite detention, Mr. Gonzalez would forego his residence in the United States, and request that he be deported. [5]

---

[4] INS even released another Petitioner in that case with a far less compelling case than that of Mr. Gonzalez, to wit, Mr. Vang, who was appealing the Immigration Judge's ruling that he was **ineligible** for any relief from deportation.

[5] In fact, he has already made that request of the Immigration Judge, who persuaded him to "stick it out" for at least another month, while his counsel seek habeas relief.

8

Furthermore, the threatened injury clearly outweighs any harm that may result to INS. In fact, it is difficult to see what harm, if any, INS would suffer if Mr. Gonzalez were granted conditional liberty during the pendency of INS' appeals.

Nor would such an action undermine the public interest. An individualized bond hearing to assess any flight risk and/or danger to the public has already been conducted, and it was concluded that Mr. Gonzalez presents no significant threat to the public.

It is therefore respectfully urged that Petitioner has demonstrated entitlement to some form of preliminary relief, and urges that a Temporary Restraining Order, and/or Preliminary Injunction issue, requiring Respondents to comply with the Order of Immigration Judge David Ayala, that he be released on recognizance, pending INS' appeal of the Judge's order granting cancellation of removal.

Respectfully Submitted,

Lisa S. Brodyaga,                                  and      Thelma O. Garcia,
17891 Landrum Park Road                                     301 E. Madison
San Benito, TX 78586                                        Harlingen, Texas 78550
(956) 421-3226                                              (956) 425-3701
Texas Bar: 03052800
Fed. I.D. 1178

CERTIFICATE OF SERVICE

I hereby certify that a courtesy copy of the foregoing was personally delivered to the Office of the United States Attorney, Attention Lisa Putnam, SAUSA, or Nancy Masso, AUSA, 600 E. Harrison, Brownsville, Texas, this 16th day of April, 2001.

9