*/c*

United States District Court
Southern District of Texas
ENTERED

**MAY 3 0 2001**

Michael N. Milby, Clerk of Court
By Deputy Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| RAFAEL GONZALEZ-NOYOLA | § | |
| Petitioner, | § | |
|  | § | |
| v. | § | CIVIL ACTION NO. B-01-058 |
|  | § | |
| E.M. TROMINSKI, ET. AL, | § | |
| Respondent. | § | |

## MAGISTRATE'S REPORT AND RECOMMENDATION

### Factual Summary

Before the Court is Petitioner Rafael Gonzalez-Noyola's Petition for Writ of Habeas Corpus and Motion for Preliminary Injunction.[1]  The relevant facts of this case were best summarized by Mr. Gonzalez' attorney as follows:

> Petitioner Rafael Gonzalez-Noyola is a native and citizen of Mexico, who entered the United States as a lawful permanent resident on November 6, 1982.  On February 24, 1999, he was convicted of the offense of (simple) possession of cocaine, which offense was committed on or about August 4, 1998.  At the time of this conviction, Mr. Gonzalez was on probation, under "deferred adjudication," for the offense of (simple) possession of marijuana. As a result of the cocaine conviction, probation was revoked, guilt was adjudicated, and he was remanded into custody to serve a two-year sentence for these offenses.
>
> Also as a result of the cocaine conviction, a [Notice to Appear] was issued, alleging deportability based upon Mr. Gonzalez' violation of §237(a)(2)(B)(I) of the Act, 8 U.S.C. §1227(a)(2)(B)(I).  At his removal hearing, on December 7, 1999, Mr. Gonzalez admitted that he was removable as charged, and sought relief under Section 240a of the Act, (8 U.S.C. §1229b(a)), cancellation of removal for lawful permanent residents, the successor provision to the former §212(c).  However, the Immigration Judge ruled that his cocaine conviction constituted an "aggravated felony," rendering him ineligible for any form of relief, and ordered him deported.  Mr. Gonzalez appealed.  Shortly thereafter, Mr. Gonzalez completed his sentence for the criminal offenses and was transferred to the custody of INS.
>
> On  September 29, 2000, the BIA dismissed Mr. Gonzalez' appeal, concluding that

---

[1]  *See* Pleading No. 1 at 1-3.

CAbPDF - www.fineio.com

the cocaine offense constituted an aggravated felony, and that he was therefore ineligible for cancellation of removal. However, on December 8, 2000, the Board granted Mr. Gonzalez' motion to reconsider. The Board held that Mr. Gonzalez had not been convicted of an aggravated felony, and that he was eligible for cancellation of removal. The case was therefore remanded to the Immigration Judge, for the purpose of permitting him to apply for such relief. Following a change of venue to the Harlingen district, where Mr. Gonzalez' family resides, he was transferred to the custody of Respondent Trominski, and detained at Bayview, Texas, where he remains in detention at this time.

Following a hearing on the merits of Mr. Gonzalez' application for cancellation of removal, Immigration Judge David Ayala found that he merited such relief in the exercise of discretion, and terminated removal proceedings. He also ordered that Mr. Gonzalez be released on his own recognizance. The INS filed a notice of its intent to appeal under 8 C.F.R. § 3.19(i)(2) and [has since refused to abide by the IJ's order to release Mr. Gonzalez. The INS asserts that §236(c) of 8 U.S.C. §1226(c) ("Mandatory Detention"), coupled with the "automatic stay" provisions of C.F.R. § 3.19(i)(2), authorizes their custody of Mr. Gonzalez, during the pendency of their appeal.]²

Having been in INS custody for several months now, Mr. Gonzalez asks that this Court order the INS to comply with Judge Ayala's order and release him from custody. He alleges that: "as applied herein, the 'mandatory detention' provisions of 8 U.S.C. §1226(c) (§ 236(c)), coupled with the 'automatic stay' provisions of 8 C.F.R. §3.19(i)(2), violate substantive and procedural due process, and deprive him of the equal protection of the laws."³

### Legal Analysis of Mr. Gonzalez' Due Process Claims

Mr. Gonzalez' claims are supported by the great weight of authority.⁴ Although no circuit

---

² *Id.*

³ *Id.* at 1 *(citing Juarez-Vasquez v. Holmes,* 2000 WL 1705775 (E.D.Pa.2000), and *Tiv v. Reno,* 2000 WL 246252 (N.D.Ill.2000)).

⁴ *See* Pleading No. 2 at 2-4 *(citing Cardoso v. Reno,* 127 F.Supp.2d 106 (D.Conn.2001) (statute permitting INS to detain indefinitely lawful permanent resident alien who was deportable, but not yet subject to administratively final order of removal and who was eligible for discretionary relief, without first conducting individualized bail hearing to carefully assess her risk of flight and criminal recidivism, was not narrowly tailored, and thus, as applied, violated alien's substantive due process right to be free of arbitrary confinement pending completion of deportation proceedings); *Radoncic v. Zemski,* 121 F.Supp2d 814 (E.D.Pa. 2000) (indefinite detention of an alien pending removal proceedings implicated a fundamental liberty interest, and denied alien's due process rights); *Koita et al v. Reno,* 113 F.Supp.2d 737 (M.D.Pa. 2000) (mandatory detention requirement violated aliens' substantive due process rights); *Son Vo v. Greene,* 109 F.Supp.2d 1281 (D.Colo. 2000) (Statute requiring that criminal aliens in deportation proceedings be detained without bond

2

CUTEPDF - www.texta.com

court has addressed the issues presented by Mr. Gonzalez, virtually every district court to consider § 236(c) mandatory detention, in contexts similar to the one present here, has ruled that it violates both procedural and substantive due process.[5] More importantly, these cases demonstrate that Mr. Gonzalez' detention is particularly offensive because, in those cases, each petitioner's entitlement to deportation relief was far less certain than it is for Mr. Gonzalez.   In fact, Mr. Gonzalez' case is the only case where: a lawful permanent resident was ordered eligible for deportation relief, granted deportation relief, determined not to be a flight risk or threat to the public, ordered released from custody, and *then* kept in custody by the INS while they pursue *their* appeal of BIA and Immigration Judge's rulings.  Specifically, the INS has: imprisoned an otherwise free, permanent resident alien; who is currently not subject to deportation; without an individualized hearing or other form of due process; despite the fact that Mr. Gonzalez' bond hearing made clear that he was neither a danger to the public, nor a flight risk.[6]

---

hearing violated substantive due process rights of permanent resident who had reasonable chance of success on claim that he was not aggravated felon); *Small v. Reno,* 127 F.Supp.2d 305 (D. Conn.2000) (mandatory detention provisions of IIRIRA violated substantive due process as applied, and application of mandatory detention provision without a bond hearing, while request for a waiver of removal was pending, violated alien's right to procedural due process); *Welch v. Reno,* 101 F.Supp.2d 347 (D.Md.2000) (Given the liberty interest involved and lack of safeguards, statute allowing government to take into custody aliens who have committed certain offenses without granting alien a bail review hearing was excessive in relation to its purpose and, therefore, violative of alien's substantive due process rights.); *Danh v. Demore,* 59 F.Supp.2d 994 (N.D.Ca.1999) (mandatory detention provisions violated substantive due process as applied to resident aliens, and challenged provision violated procedural due process rights of resident aliens); *Rogowski v. Reno,* 94 F.Supp.2d 177 (D.Conn.1999) (mandatory detention of lawful permanent resident violated his substantive due process rights; alien had a liberty interest in freedom from arbitrary confinement and was entitled to an opportunity to demonstrate his claim to bail); *Bouayad v. Holmes,* 74 F.Supp.2d 471 (E.D.Pa. 1999) (mandatory detention of alien pending removal proceeding unconstitutionally abridged alien's fundamental right to liberty under due process clause); *Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Ore.1999) (provision mandating detention, without requiring bail hearing, of all aliens convicted of certain crimes was not sufficiently narrowly tailored to serve government's compelling interest in preventing aliens with felony convictions from absconding, and thus violated substantive due process; individual bond hearings would serve government's interest without violating due process); and *Martinez et al v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998) (statute requiring that criminal aliens detained for deportation proceedings be held without bond pending determination of deportability violated, on its face, constitutional right to due process of law); *But see, Okeke v. Underdown,* 73 F.Supp.2d 635 (W.D.Tx.2000) (finding the mandatory detention provisions to be constitutional. No appeal to the Fifth Circuit was taken in that case)).

[5]   *Id.*

[6]   *See* Pleading No. 9 at 3 (*containing* Respondent's concession that Mr. Gonzalez was ordered released); Pleading No. 3 (*containing* Judge Ayala's order instructing Mr. Gonzalez' release).

3

Although the Board that will hear the INS's appeal happens to be the very same Board that has *already* ruled that Mr. Gonzalez *is* eligible for deportation relief because "he has *not* been convicted of an aggravated felony,"[7] the INS asserts that they may detain Mr. Gonzalez while they pursue an appeal process that could take up to two years.[8]  The only arguments Respondents present to justify this position are statutory arguments which fail to respond to the cases which hold that § 236(c) cannot constitutionally be applied in circumstances like those presented here.  While this Court acknowledges that the INS *may* have statutory authority to detain Mr. Gonzalez, the real issue is whether the INS's actions in this case are constitutional.  Despite having the opportunity to address this issue during the May 8th Show Cause Hearing, the Respondents presented no constitutional argument—other than to opine that they thought the INS's actions were constitutional because they think that the BIA will ultimately change its mind and order Mr. Gonzalez deportable.

As stated above, however, the great weight of authority suggests that Mr. Gonzalez' detention is unconstitutional. *Juarez-Vasquez v. Holmes,* in particular, dictates this conclusion.[9]  Mr. Gonzalez' attorney has correctly summarized this case as follows:

> The petitioner in *Juarez-Vasquez,* also a lawful permanent resident, had been convicted four times of driving while intoxicated.  While in detention for this offense, INS lodged a detainer against him, and upon completion of his criminal sentence, took him into custody, alleging that he was deportable for having been convicted of an aggravated felony, in that his felony DWI convictions constituted crimes of violence within the meaning of 8 U.S.C. §1101(a)(43)(F).  An Immigration Judge disagreed, and ordered that removal proceedings be terminated, and that he be released.  INS filed for an automatic stay, under 8 C.F.R. §3.19(i)(2), and the petitioner sought relief in habeas corpus.  In granting habeas relief, and ordering an "individualized" custody hearing, (such as has already been conducted

---

[7]  *See* Pleading No. 3 at 6 (*containing* the five-page, single-spaced Decision of Board of Immigration Appeals which provides a well-reasoned and lengthy explanation as to why a prior conviction must have been *finally adjudicated* in order to elevate a later conviction into the aggravated felony status under 21 U.S.C. § 844(a)); *See also* Pleading No 10 (refuting, accurately, Respondent's appellate argument regarding the aggravated felony issue; distinguishing *United States v. Cisneros,* 112 F.3d 1272 (5th Cir.1997), a case relied upon by Respondents, from Mr. Gonzalez' case; and defending the BIA's aggravated felony holding.).

[8]  *See* Transcripts of May 8, 2001 Show Cause Hearing where it was conceded by Respondent's that, due to a mistake in failing to get Mr. Gonzalez' immigration hearings transcribed, the appeals process could take several months longer; and where both parties conceded that obtaining an ultimate resolution to Mr. Gonzalez' case could take up to two years.

[9]  *Juarez-Vasquez v. Holmes,* 2000 WL 1705775 (E.D.Pa.2000).

in the case at bar), the Court reasoned as follows:

> We need not address the issues of whether Petitioner's conviction for drunk driving satisfies the definition of a "crime of violence." That is a question to be answered by the BIA in the first instance and the Court of Appeals thereafter. The sole question we must address is whether Petitioner's confinement without an individualized evaluation of Petitioner's detention is constitutionally permissible. We find the answer to this question is no.[10]

The *Juarez-Vasquez* Court then went on to compare its case to the Third Circuit case, *Chi Thon Ngo v. INS*, which addressed mandatory detention under a different statute.[11] In *Chi Thon Ngo*, the Court held that it is constitutional to detain an alien *"under a final order* of exclusion, deportation, or removal *if* (1) there is a possibility of his eventual departure; (2) there are *adequate and reasonable provisions for the grant of parole*; and (3) *detention is necessary to prevent a risk of flight or a threat to the community."*[12] Because the INS merely engaged in a "grudging and perfunctory" review of Chi Thon Ngo's right to parole, and because the INS failed to inquire into whether he might flee or harm the community, the Court held that the INS had violated Chi Thon Ngo's due process rights.[13] Finding similar due process violations, *Juarez-Vasquez* then held:

> No such provisions for parole are provided in § 1226(c) [§ 236(c)], and given the provision of the automatic stay, Petitioner has received no individualized evaluation of his detention. We find that a person in Petitioner's position, adjudged by the IJ not to be deportable but because of the automatic stay may not gain his freedom pending the conclusion of the INS appeal is in a legal limbo similar to that of the excludable alien in *Chi Thon Ngo*. While Petitioner will, in time, eventually be either deported or released, there is nothing in the automatic stay provision of 8 C.F.R. § 3.19(i) to limit to the time the BIA takes to resolve the appeal. Coupled to the unavailability of having the stay order reviewed, Petitioner's liberty interests are in a state of suspended animation.
>
> We recognize that Petitioner does not possess an absolute right to his liberty because Congress is within its power to detain aliens during the pendency of removal proceedings. However, because § 1226(c) imposes an absolute restriction upon Petitioner's liberty and does

---

[10] *See* Pleading No. 2 at 4-5 (*citing Juarez-Vasquez v. Holmes* at 1).

[11] *Chi Thon Ngo v. INS*, 192 F.3d 390 (3d Cir.1999).

[12] *Id.* at 397. (emphasis added).

[13] *Id.* at 397-98.

5

not permit any possibility of a detention hearing where his risk of flight and risk to the community would be individually evaluated, we find that habeas relief is appropriate.[14]

Of the above-cited cases, *Juarez-Vasquez* is most like Mr. Gonzalez' case because Mr. Vasquez was also held qualified for deportation relief and ordered released. Mr. Gonzalez' case, however, is even more compelling because it has already been determined that he is not a flight risk or a threat to the community. Therefore, because the purpose of mandatory detention is to prevent flight or crime on the part of an alien who is awaiting deportation, the fact that Juarez-Vasquez' detention was unconstitutional can only mean that Mr. Gonzalez' detention is doubly so.[15]

A plethora of cases, less compelling than the instant one, support this conclusion.[16]  For instance, in *Cardoso v. Reno*, the Court held:

> The length of Ms. Cardoso's detention depends solely on bureaucratic happenstance or vagaries of scheduling her hearing on discretionary relief and appeals, unfettered by any statutory timeliness.  The government maintains the indefinite detention under § 236(c), as a practical matter, has an endpoint because once the deportation processing is completed and a final order is issued, the alien is entitled to a bond hearing under § 241(a) if not removed in 90 days.  The most that this "endpoint" to mandatory detention seems to demonstrate, however, is the inadequate tailoring of § 236(c) to its purported purpose, because, illogically, aliens with a final order of removal who thus present far more of a flight risk may be considered for release on bond, but those with great incentives to appear before an immigration judge to show their worthiness to remain in this country, may not.
>
> The Court thus concludes that the irrebuttable presumption of flight and danger risk resulting in this *blanket rule* of detention as applied to Petitioner under § 236(c) is *excessive in relation to the governmental purposes of limiting abscondment of deportable criminal aliens and preventing future danger to the community.  All of the interests advanced by the government as justifying the infringement on Petitioner's fundamental liberty interests can be satisfied by conducting individualized bail hearings that carefully assess the Petitioner's risk of flight and criminal recidivism.*
>
> The government offers no justification for requiring the blanket rule over individualized determinations for aliens of Ms. Cardoso's status, other than deference to Congressional decisions on immigration policy, and its insistence that Petitioner has no fundamental liberty interest, which the Court has rejected for the reasons discussed above.

---

[14]  *Supra* FN9 at 2.

[15]  *Cardoso v. Reno*, 127 F.Supp.2d 106, 115 (D.Conn.2001).

[16]  *Supra* FN4.

6

Ms. Cardoso is clearly not entitled as a matter of constitutional right to the full panoply of safeguards given criminal defendants, and Congress certainly could place timing and procedural restrictions on such individualized determinations, such as imposing the burden of proof on the alien to rebut a presumption of dangerousness or abscondment risk, or limiting the government's proof necessary for detention to merely a preponderance of the evidence, or requiring such hearings to be held only after a reasonable time period for conducting INS administrative proceedings. Such statutory tailoring might very well pass constitutional muster, for "Congress regularly makes rules [for aliens] that would be unacceptable if applied to citizens." But a Congressional enactment may not infringe upon Petitioner's fundamental liberty interest without *narrowly tailoring* the means to achieve the compelling purpose for such infringement.

  In summary, the Court concludes that Ms. Cardoso has a fundamental liberty interest in not being detained without some individualized determination of her flight risk and dangerousness, while she remains a permanent legal alien with § 240A relief still available to her, and is not yet subject to an administratively final order of removal. Applying the Salerno analysis, the Court finds that § 236(c) detention is regulatory in nature, but as applied to Petitioner it is excessive in relation to its purposes, which purposes could be achieved by an individual bond hearing while simultaneously protecting her fundamental liberty right. The Court accordingly holds that the statute is unconstitutional as applied to Petitioner, a lawful permanent resident who may still be entitled to remain in this country, and *who cannot be required to relinquish her opportunity to apply for discretionary relief by agreeing to deportation in order to be free from custody.*[17]

Unlike Mr. Gonzalez, Ms. Cardoso had not yet obtained a ruling terminating her deportation, qualifying her for deportation relief, or ordering her released. Nevertheless, the *Cardoso* Court held that § 236(c), as applied to her case, was unconstitutional because it was not narrowly tailored to achieve a compelling government purpose. Therefore, because § 236(c)'s purpose is to prevent flight or crime on the part of a *deportable* alien, Mr. Gonzalez' detention is not only excessive *and* coercive, it is contrary to the intended purpose of § 236(c) itself. Due to the previous rulings of the BIA, the Immigration Judge, and the lack of evidence suggesting that Mr. Gonzalez poses the above-referenced risks, this Court has no choice but to conclude that the INS's indefinite detention of Mr. Gonzalez is not intended to serve the purposes of § 236(c). Sadly, given the near certainty of his eventual release, the more logical and unfortunate conclusion is that the INS hopes to use § 236(c) to coerce Mr. Gonzalez into giving up his right to remain in this country by refusing him his court

---

[17]  *Cardoso v. Reno*, 127 F.Supp.2d 106, 115-127 (D.Conn.2001) (citations omitted) (emphasis added).

ordered freedom.[18]

Such a perverted use of § 236(c) cannot be allowed. There is a very real distinction between Mr. Gonzalez, and those aliens who are being detained while they await an inevitable deportation due to the BIA's determination that they do not qualify for deportation relief. Because § 236(c) has no provision for this distinction, it cannot constitutionally be applied to Mr. Gonzalez. Arguably, the INS could interpret § 236(c) in a constitutionally permissible way by abstaining from imprisoning those permanent resident aliens who are no longer subject to *deportation*.[19] Mr. Gonzalez is such a person. The fact that the INS might persuade the BIA to overturn its previous, well-reasoned, five-page, single-spaced ruling regarding Mr. Gonzalez' eligibility for deportation relief, does not make him subject to deportation now.[20] As he is not currently subject to deportation, a provision used to detain *deportable* aliens should not apply to him.

More than common sense dictates this conclusion. In *Parra v. Perryman*, the only circuit court case to address the type of mandatory detention presented here, the Court held that due process is not offended when the alien being detained no longer has any legal entitlement to remain in the United States.[21] Dealing with an alien who had conceded his status as an aggravated felon, and who was not eligible for any type of deportation relief, the Court noted that Parra could not complain that his detention violated his due process rights because all he had to do to end his confinement was to

---

[18]   *See* Victoria Cook Capitaine, Life in Prison Without a Trial: The Indefinite Detention of Immigrants in the United States, 79 Tex. L. Rev. 769, 782 (2001) *(noting* that from 1997 to 2000 the average daily number of detainees in INS custody went from 8,200 to 20,000; and *quoting* an INS spokesperson in Washington D.C. who announced: "We apprehend and take into custody more people than any other agency in the world.").

[19]   This is especially true in this case because the INS could only achieve Mr. Gonzalez' detention by using § 236(c) *in conjunction with* the "automatic stay" provisions of 8 C.F.R. § 3.19(i)(2). Specifically, the automatic stay provision was needed to "stay" Judge Ayala's order which directed Mr. Gonzalez' release. Because the automatic stay provision is a discretionary tool as opposed to a mandatory one, the INS could have exercised its discretion and abstained from staying Judge Ayala's order. Had it done so, the applicability of mandatory detention in Mr. Gonzalez' case would arguably turn on the language of § 236(c); a provision which only authorizes the detention of *deportable* aliens. *See* 8 C.F.R. §3.19(i)(2).

[20]   *Supra* FN7.

[21]   *Parra v. Perryman,* 172 F.3d 954, 958 (7th Cir.1999).

8

obey the ruling of the Immigration Judge and leave.[22] The key distinction between that case and this one, however, is that Parra had already suffered an unfavorable ruling and had no hope of obtaining discretionary relief.[23] Albeit, in this case it is the INS who is appealing the Immigration Judge and BIA's prior decisions, not Mr. Gonzalez.

Finally, the Fifth Circuit's opinion in *Zadvydas v. Underdown* suggests that it will concur with the above-referenced cases and hold that Mr. Gonzalez' detention is unconstitutional.[24] Although *Zadvydas* dealt with a different mandatory detention provision, analogizing Zadvydas' position with that of Mr. Gonzalez is useful.[25] In *Zadvydas*, the Court held that "the government may detain a resident alien *based on* either danger to the community or risk of flight while *good faith* efforts to effectuate the alien's deportation continue and reasonable parole and periodic review procedures are in place."[26] Because Zadvydas' deportation order had long been final, and he was merely awaiting his inevitable deportation, Zadvydas' legal position is fundamentally different from that of Mr. Gonzalez.[27] In short, Mr. Gonzalez' detention is not "based on" his flight risk, nor is it "based on" his danger to the community, nor can the INS claim that they are making "good faith" efforts to

---

[22]  *Id.* at 956-58 (noting that Parra "concedes that he is an alien and that he has been convicted (on his plea of guilty) of a crime meeting the statutory definition of an aggravated felony.  On March 3, 1999, an immigration judge concluded that Parra is deportable and ineligible for any relief from removal; his motions papers in this court do not even hint at a substantive argument that he is entitled to remain in the United States.  The question at hand therefore is where he passes the time while waiting for the order to become final . . . A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs.).

[23]  Here it must be noted that the *Parra* Court pointed out that the only reason it refrained from saying that Parra had *no* hope of discretionary relief was because "life is full of surprises, and a last-minute amendment of the immigration laws or change in policy has kept many an immigrant in this country.  For current purposes "little" hope will do." *Id.* at 958.

[24]  *Zadvydas v. Underdown*, 185 F.3d 279 (5th Cir. 1999), cert. granted, 121 S.Ct. 297 (2000).

[25]  *Id.* at 286. (citing 8 U.S.C. § 1231(a)(6), Immigration and Nationality Act (INA) § 241(a)(6)).

[26]  *Id.* at 297.

[27]  *Id.* at 286.

9

CMPDF - www.texis.com

effectuate his deportation because they currently have no authority to deport him.[28]

Section 236(c), as applied to Mr. Gonzalez, violates his substantive and procedural due process rights because it fails to provide him with a forum to contest his imprisonment. Under the blanket rule of § 236(c), even the reasonable parole and periodic review procedures that were available to Mr. Zadvydas, are not available to Mr. Gonzalez. Accordingly, where Mr. Zadvydas' detention was permissible, Mr. Gonzalez' detention is not.

The legal fiction stating that imprisonment is not punishment when it is visited upon aliens in deportation proceedings, cannot apply in situations where no justification exists for an alien's imprisonment, other than the INS's far-fetched hope that the BIA will reverse its disposition of the alien's case.[29] Mr. Gonzalez may not be a shining example of virtue before the drug laws of this country, but . . . he has already served his time. Because Mr. Gonzalez' imprisonment does not serve the effectuation of a final order of deportation, his imprisonment is nothing if it is not punishment.[30] Claiming otherwise stretches an already tired legal fiction past its breaking point, for it "overworks legal fiction to say that one is free in law when by the commonest of common sense he is bound."[31]

---

[28]   Here it should be noted that the indefinite detention allowed by the *Zadvydas* decision has met with much criticism. Reasoning that deportable permanent resident aliens have the same lack of constitutional rights as excludable aliens, the *Zadvydas* Court held that the detention of deportable permanent resident aliens did not offend the Constitution so long as the above-referenced safeguards were in place. The Supreme Court has since granted certiorari in *Zadvydas* to resolve the conflict between it and the Ninth Circuit's holding in Ma v. Reno. *See Ma v. Reno,* 208 F.3d 815 (9th Cir. 2000), cert. granted, 121 S.Ct. 297 (2000). Accordingly, should the Supreme Court overturn *Zadvydas,* Mr. Gonzalez could assert even more constitutional arguments than he has currently presented. *Supra* FN18 at 773, 780.

[29]   *Chi Thon Ngo v. INS,* 192 F.3d 390, 397 (3d Cir.1999)(*referring* to the legal fiction that "detention is not punishment").

[30]   *Id.* at 396-98 (*citing Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896) ("persons within the territory of the United States ... and ... even aliens ... [may not] ... be deprived of life, liberty or property without due process of law"); and *opining* that: "Characterizing prolonged detention as anything other than punishment might be somewhat puzzling to Petitioner, who remained in jail under the same conditions as before the state released him, although his status had technically changed from that of a state inmate to an INS "detainee." Similarly, an alien whose detention occurs in a maximum security federal prison may be forgiven for wondering when his punishment stopped and detention began."); *See also Zadvydas v. Underdown,* at 290 (*citing Wong Wing v. United States,* at 981, and *noting* that permanent resident aliens may not be punished without due process ).

[31]   *Id.* at 396 (*citing* Justice Jackson's dissent in *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 215-216, 73 S.Ct. 625, 97 L.Ed. 956 (1953)).

CHMPDF - www.texiss.com

## Legal Analysis of Mr. Gonzalez' Equal Protection Claims

Mr. Gonzalez next asserts that his detention violates the Equal Protection Clause. His attorney notes:

> The undersigned has located *no* case where a court upheld a decision by [the] INS to continue to detain a lawful permanent resident, allegedly under the "mandatory detention" provisions of 8 U.S.C. §1226(c), *after* that person had been granted discretionary relief by an Immigration Judge, and in the face of an Order by that Immigration Judge that he be released on his own recognizance. In fact, the undersigned has located no case where INS continued to physically detain the immigrant under such circumstances. To the contrary, in *Tiv et al v. Reno*, it was noted that INS had released Juan Mireles, one of the petitioners therein, a [legal permanent resident] who had been held pursuant to mandatory detention, after he was granted cancellation of removal by an Immigration Judge, while INS appealed [the] IJ's ruling that he had not been convicted of an aggravated felony. This is exactly the procedural posture of the case at bar, and [it] presents a classic example of an equal protection violation. [32]

Like Mr. Gonzalez' attorney, this Court has unearthed no authority to suggest that Mr. Gonzalez' detention is compatible with his equal protection rights. As Respondents have presented no argument whatsoever to explain their disparate treatment of Mr. Gonzalez, this Court must agree with Mr. Gonzalez and find that his imprisonment constitutes "a classic example of an equal protection violation."[33] While normally a more lengthy analysis would be appropriate, the above disposition of Mr. Gonzalez' due process claims makes further analysis of his equal protections claims unnecessary. Mr. Gonzalez' equal protection claims are at least as strong as his due process claims and he need demonstrate no more to obtain relief.

---

[32] *See* Pleading No. 2 at 7-8. (*citing Tiv v. Reno*, 2000 WL 246252 (N.D.Ill.2000 INS, and *noting* that the "INS even released another petitioner in that case with a far less compelling case than that of Mr. Gonzalez, to wit, Mr. Vang, who was appealing the Immigration Judge's ruling that he was *ineligible* for any relief from deportation.).

[33] *Id.*

11

## Recommendation

Mr. Gonzalez is entitled to the preliminary injunction he seeks. Eligibility for such an injunction is demonstrated when a petitioner can demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if such relief is not granted, (3) that the threatened injury outweighs any harm that may result to the opposing party, and (4) that such an action will not undermine the public interest.[34]

Mr. Gonzalez has met his burden. As mentioned above, the BIA has already correctly ruled that Mr. Gonzalez is not an aggravated felon. Judge Ayala has also held that Mr. Gonzalez is eligible for deportation relief. On appeal, Mr. Gonzalez' likelihood of "success on the merits" is more than substantial. Having reviewed Respondent's argument on the aggravated felony issue, the Court does not believe that Respondents will prevail the second time around.

Next, Mr. Gonzalez' unconstitutional imprisonment is itself irreparable harm.[35] As his attorney has so aptly pointed out, the INS's appeal could take many months, if not years, and the INS is not capable of restoring to Mr. Gonzalez, or to his family, the time he has spent in unlawful and unjust detention. Because Mr. Gonzalez is highly likely to prevail on appeal, his incentive to flee is minimal. Morever, this Court's show cause hearing and Mr. Gonzalez' bond hearing have already made clear that he is neither a flight risk, nor a threat to the community. Thus, the injury now suffered by Mr. Gonzalez clearly outweighs any "harm" that the INS could suffer if it is forced to release him.

For the above-stated reasons, ordering Mr. Gonzalez' freedom will not undermine the public interest. In fact, ordering his release can only bolster the public's faith in the judicial system by demonstrating that the Courts do in fact protect the constitutional rights of individuals. Accordingly, this Court recommends Mr. Gonzalez' immediate release.

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the

---

[34] See Valley v. Rapides Parish School Bd., 118 F.3d 1047 (5th Cir. 1997); See also, F.R.Civ.Proc. 65.

[35] See Burdine v. Johnson, 87 F.Supp.2d 711 (S.D.Tex.2000) (holding that a "successful habeas petitioner was entitled to be released from custody pending appeal of district court order granting writ; the state failed to present any facts to suggest that Petitioner was a danger to community and Petitioner suffered *irreparable harm each day he was imprisoned in violation of his constitutional rights.*) (emphasis added).

unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Automobile Association,* 79 F.3d 1415 (5th Cir.1996).

DONE in Brownsville, Texas this 29th day of 2001.

Felix Recio
United States Magistrate Judge

13