~14

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 0 8 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| RAFAEL GONZALEZ-NOYOLA, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. B-01-058 |
| | ) | |
| E.M. TROMINSKI, INS | ) | |
| DISTRICT DIRECTOR, et al. | ) | |
|     Respondents. | ) | |
| _____ | ) | |

**RESPONDENTS' OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

On May 29, 2001, Magistrate Judge Felix Recio signed a
Report and Recommendation ("Report") in this case, finding
that the Petitioner, Rafael Gonzalez-Noyola ("Gonzalez") is
entitled to a grant of his petition for writ of habeas corpus.
Specifically, the Magistrate Judge found that Gonzalez had a
substantial likelihood of success on the merits, that
Gonzalez's detention itself was irreparable harm, that the
injury to Gonzalez outweighed any harm that the INS could
suffer, and that Gonzalez's release would not undermine the
public interest.  The Magistrate Judge found that Gonzalez's
continued detention while his case is being appealed by the
Immigration and Naturalization Service ("Service") violates

CNIPDF - www.faxis.com

his right to due process and equal protection. These conclusions of law should be set aside.

### I. THE MAGISTRATE JUDGE INCORRCTLY CONCLUDED THAT GONZALEZ HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

In his Report, the Magistrate Judge determined that Gonzalez has a substantial likelihood of success on the merits. This finding is incorrect. The Service has appealed both the Order of Release on Recognizance and the grant of the cancellation of removal pursuant to 8 U.S.C. §1229b(a). At the hearing before Magistrate Recio, Gonzalez, through counsel, acquiesced that he would not succeed on the bond appeal because the Board of Immigration Appeals ("Board") would find that Gonzalez is subject to the mandatory detention provisions of 8 U.S.C. §1226(c), therefore, allowing his continued detention. Therefore, we must review the Immigration Judge's finding that Gonzalez has not been convicted of an aggravated felony, was statutorily eligible to apply for relief, and a grant of that relief was warranted to determine if Gonzalez has a substantial likelihood of success before the Board.

2

The Government contends that since the hearing before the Magistrate Judge, Gonzalez's likelihood of success on the merits has been further diminished by the Fifth Circuit Court of Appeals' ("Fifth Circuit") decision in U.S. v. Hernandez-Avalos, ____ F.3d ____, 2001 WL 502383 (5th Cir. May 11, 2001). In that case, the Fifth Circuit criticized the Board's approach to interpreting the term "aggravated felony" by making a distinction between the term's use in a sentencing guideline context and an immigration context, characterizing it as an "erroneous interpretation of applicable law." Hernandez-Avalos at slip op. p. 3.

The Fifth Circuit has held that a conviction for aggravated possession of marijuana, possession of more than fifty pounds but less than 200 pounds of marijuana, constituted an aggravated felony for purposes of the sentencing guidelines. U.S. v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997). Adopting the reasoning of the First Circuit Court of Appeals and four other Circuit Courts, the Fifth Circuit held that "a state drug offense is properly deemed a 'felony' ... if the offense is classified as a felony under the law of the relevant state, even if the same offense would be punishable only as a

3

misdemeanor under federal law." *Id.* at 694. The Fifth Circuit's decision in *Hinojosa* is binding precedent regarding the application of the term "aggravated felony" in the immigration context, despite the fact that it was a decision made within the federal sentencing guidelines context. This position is bolstered by the <u>Hernandez-Avalos</u>. "[T]he statutory language is clear -- and is the same -- whether applied in sentencing or immigration cases." <u>Hernandez-Avalos</u> at slip op. 4. "Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law but only a misdemeanor under the [Controlled Substances Act]." <u>Id.</u> quoting <u>U.S. v. Briones-Mata</u>, 116 F.3d 308, 310 (8th Cir. 1997).

The Board has held that state drug offenses must be analyzed in light of the federal statutes and that the phrase "any felony punishable under the Controlled Substance Act" contained within 18 U.S.C. §924(c), to mean a crime classified as a felony under the provisions of the Controlled Substance Act before it can be considered as an aggravated felony. <u>Matter of L-G-</u>, 21 I&N Dec. 89 (BIA 1995) 1995 WL 582051. More recently, the Board has rejected the holding in <u>Hinojosa-Lopez</u>,

4

finding that the Board may interpret the phrase "aggravated felony" differently for purposes of implementing immigration law. <u>Matter of K-V-D-</u>, Int. Dec. 3422 (BIA 1999).

The term "aggravated felony" was first added to the Act by §7342 of the Anti-Drug Abuse Act of 1988, Pub. L. 100-690, 102 Stat. 4181. The term is defined within the federal sentencing guidelines. As that definition is expanded, whether it be within the sentencing guidelines context or the immigration law context, we must look to all interpretations of that term. The fact that the interpretation of "aggravated felony" in <u>Hinojosa-Lopez</u> was within the sentencing guidelines context does not make that interpretation any less effective within the immigration context. The holding in <u>Hinojosa-Lopez</u> should be applied here, and in all such cases where a conviction needs to analyzed as an "aggravated felony."

On November 17, 1997, Gonzalez was convicted in the 49th Judicial District of Webb County, Texas, of the offense of possession of marijuana (between 5 and 50 pounds), was granted deferred adjudication and placed on 5 years probation. The fact that adjudication of guilt was deferred and that the respondent received community supervision and not a term of

5

imprisonment is irrelevant.  *See* §101(a)(48) of the Act.  The offense Gonzalez was convicted of is a felony that is punishable for a term of more than one year.

While still under community supervision for the first offense, on February 24, 1999, Gonzalez was convicted in the 182nd District Court of Harris County, Texas, of the offense of possession of a controlled substance (cocaine) and was sentenced to 8 years confinement.  This offense was committed on or about August 4, 1998, while still serving probation for the 1997 marijuana possession conviction.  This cocaine possession offense is also a felony that is punishable for a term of more than one year.

Under the interpretation of the term "aggravated felony" in <u>Hinojosa-Lopez</u>, either one of these convictions can be characterized as an aggravated felony.  Since the Fifth Circuit has very recently determined that there should be no distinction in the use of the term "aggravated felony" in a sentencing guidelines context and an immigration context, Government's likelihood of success on the merits of its appeal is substantial and not the "far-fetched hope" characterized by the Magistrate Judge.

6

The Act provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained <u>pending a decision on whether the alien is to be removed from the United States.</u>" 8 U.S.C. §1226(a) (emphasis added). The Act goes on to provide for the detention and release of certain aliens. The Act further provides for the mandatory detention of specified aliens. "The Attorney General <u>shall</u> take into custody any alien who ... is deportable by reason of having committed an offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) [8 U.S.C. §§1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)] ... when the alien is released ... ." 8 U.S.C. §1226(c)(1)(B) (emphasis added). The Petitioner has been charged as removable pursuant to 8 U.S.C. §§1227(a)(2)(B) and (A)(iii).

Gonzalez has conceded that he is removable, and the Immigration Judge found him to be removable, for having been convicted of a violation of a law relating to a controlled substance [8 U.S.C. §1227(a)(2)(B)] based on the 1999 cocaine possession conviction. There is no dispute that Gonzalez is removable for a violation of a law relating to a controlled substance. What is in dispute, and subject to review by the

7

Board, is Gonzalez's eligibility for the relief granted by the Immigration Judge.

As humans, judges make mistakes. Additionally, during the pendency of a case, the immigration laws may change or those laws may be judicially defined, impacting the ultimate outcome of the case. See Matter of U-M-, 20 I&N Dec. 327 (BIA 1997). When any one of these instances occur, an aggrieved party is entitled to file an appeal with a higher court for review. That is exactly what the Service has done in this case for both the bond decision and the decision regarding eligibility for relief.

There has been a determination that Gonzalez is removable from the United States based on his drug convictions. There has not been a final determination that Gonzalez should be allowed to remain in this country in spite of those convictions.

Clearly, based on these facts, Gonzalez is subject to the mandatory detention provisions of the Act, as set out above. Gonzalez's right to remain in the United States has not been finally adjudicated because the Service has reserved its right to appeal the Immigration Judge's finding that his convictions

8

do not amount to convictions of aggravated felonies and his granting of Gonzalez's relief application. Since a final decision on whether Gonzalez should be removed from the United States is pending, his continued detention is required by the provisions of the Act.

Finally, Gonzalez is also subject to the mandatory detention provisions of the Act because he has been convicted of an aggravated felony [8 U.S.C. §1227(a)(2)(A)(iii)]. The Service believes that Gonzalez has been convicted of an aggravated felony based on the two possession convictions, is removable on that charge, and, consequently, ineligible for the relief granted by the Immigration Judge, even in light of the Board's December 8, 2000, ruling. Gonzalez's argument before the Board was that his 1997 deferred adjudication could not be considered a "prior conviction" for the penalty enhancement provisions of 21 U.S.C. §844(a) because that conviction was not final and, therefore, at the time of his 1999 conviction, he did not have two convictions for simple possession sufficient to enhance the penalty, thereby making it an aggravated felony. However, in making its decision, the Board failed to discover, and the parties failed to disclose,

9

a precedent Fifth Circuit Court of Appeals decision which held
that a guilty plea that resulted in a deferred adjudication
for a felony drug offense in Texas is a "prior conviction" for
purposes of sentence enhancement.  See U.S. v. Cisneros, 112
F.3d 1272, 1280 (5th Cir. 1997).

The Service has taken the position that the Board's
December 8, 2000, decision did not adequately address the
issue of whether Gonzalez has been convicted of an aggravated
felony since precedent Fifth Circuit law was overlooked in its
decision.  Consequently, the Service believes that Gonzalez is
also subject to mandatory detention because he has been
convicted of an aggravated felony and is removable on that
ground.

Gonzalez is in a unique position in that he is a lawful
permanent resident that has been granted relief by an
Immigration Judge and it is the Government who is appealing
that decision to the Board based on several errors.  Only one
Circuit Court has addressed the issue of the constitutionality
of the detention provisions of 8 U.S.C. §1226(c) and that
alien was awaiting the conclusion of his removal proceedings,
clearly not the situation in this case.  Parra v. Perryman,

10

172 F.3d 954 (7th Cir. 1999).  However, the Parra court indicated that it would have found the mandatory detention provisions of 8 U.S.C. §1226(c) constitutional pending the conclusion of deportation proceedings.

> Well before the IIRIRA [Illegal Immigration Reform and Immigrant Responsibility Act of 1996], we stated that once deportation proceedings have begun an alien's detention is constitutional.  Arias v. Rogers, 676 F2d. 1139, 1143-44 (7th Cir. 1982).  Both Reno v. Flores, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) and Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), hold that under pre-IIRIRA law an alien had no entitlement to release pending the conclusion of deportation proceedings.  If this was so even when the Attorney General had open-ended authority to grant discretionary relief from deportation -- and thus to render the imprisonment gratuitous -- then there can be no doubt about the constitutionality of §1226(c) now that these powers to forego removal have been curtailed.

Parra, 172 F.3d at 958.

Gonzalez's success in sustaining the Immigration Judge's finding that he has not been convicted of an aggravated felony and that he is statutorily eligible to apply for cancellation of removal is not a certainty.  Nor is it even likely.  In fact, the opposite is true.  The likelihood that the

11

Government's appeal will be sustained, that Gonzalez will be found to have been convicted of an aggravated felony, and that he is statutorily ineligible for any relief is very probable. Even though Gonzalez is a lawful permanent resident, for the time being, who has been granted relief from his removal, preliminarily, his detention should continue until the Board has ruled.

**II. THE MAGISTRATE JUDGE INCORRECTLY CONCLUDED THAT GONZALEZ'S CONTINUED DETENTION AMOUNTED TO UNCONTITUTIONAL IMPRISONMENT, A VIOLATION OF DUE PROCESS AND EQUAL PROTECTION, AND IN AND OF ITSELF IRREPARABLE HARM.**

In order to assess the constitutionality of interlocutory detention of criminal aliens without bond pending a **final** decision on whether the alien is to be removed from the United States, the Court should have an overview of prior immigration detention laws, as well as 8 U.S.C. §1226(c) and its implementing regulations.

**A.    Overview of Immigration Detention**

Unlike in criminal proceedings, an alien's release from civil immigration custody pending immigration proceedings has

12

always been a privilege -- not a right or constitutional entitlement. See Parra v. Perryman, 172 F.3d 954, 958 (7th Cir. 1999). This is because the Constitution gives Congress "plenary power" over immigration matters, including broad discretionary authority to detain or release aliens pending the conclusion of immigration proceedings. See Reno v. Flores, 507 U.S. 292, 294, 305-06 (1993); Carlson v. Landon, 342 U.S. 524, 537-41 (1952); Wong Wing v. United States, 163 U.S. 228, 235 (1896). In the exercise of this plenary authority, the federal government has legitimately made decisions in immigration-detention cases that would not be unacceptable if applied in criminal proceedings. See, e.g., Reno, 507 U.S. at 305-06 (upholding mandatory detention without bond for juvenile aliens when no relative is available); Carlson, 342 U.S. at 537-42 (upholding mandatory detention of aliens without bond based on membership in communist party); U.S. ex rel. Barbour v. INS, 491 F.2d 573, 577-78 (5th Cir.) (upholding detention based on undisclosed evidence), cert. denied, 419 U.S. 873 (1974).

Moreover, 8 U.S.C. §1226(c)'s mandatory-detention requirement was not a sudden event, but the result of a

13

gradual and progressive course by Congress to take back some of the discretionary authority it had given the Attorney General over the years.[1]  See INS v. Chadha, 462 U.S. 919, 955 (1983) (indicating that Congress retains the power to narrow the scope of its delegated authority at any time). Over the last decade Congress has become increasingly concerned about the growing number of criminal aliens in this country, as well as the Service's inability to quickly remove many of these aliens from the country.[2]  Consequently, Congress made the expedited removal of criminal aliens a priority and target of reform.[3]

Well before the enactment of 8 U.S.C. §1226(c), Congress began imposing restrictions on the Attorney General's

---

[1] See Peter Schuck, Removing Criminal Aliens:  The Pitfalls & Promises Of Federalism, 22 Harv. J.L. & Pub. Pol'y, 367, 386 (1999) [hereinafter "Removing Criminal Aliens"] ("[T]he last dozen years of legislative change reveal Congress's growing demand and heightened priority for the swift removal of criminal aliens.").

[2]     Matter of Noble, Int. Dec. 3301, 1997 WL 61453 (BIA 1997).  The criminal alien population in the United States has "exploded" since 1980 - "multiplying perhaps tenfold."  See Removing Criminal Aliens, supra, note 4, at 376; see also 141 Cong. Rec. S7822-23 (daily ed. June 7, 1995) (noting that a conservative estimate of the total number of criminal aliens residing in the country is 450,000 and that an estimated 20 to 25 percent of all federal prison inmates are noncitizens); S. Rep. No. 48, 104th Cong., 1st Sess. 3, 16 (1995), 1995 WL 170285, at *46 (noting that the "deportation process for criminal aliens is byzantine to say the least").

[3]     See Ter Yang v. INS, 109 F.3d 1185, 1195 (7th Cir.)  ("That is the point of the legislation."), cert. denied, 118 S. Ct. 624 (1997).

14

authority to release criminal aliens pending their immigration proceedings. In 1988, in the Anti-Drug Abuse Act ("ADAA"), Congress initially took away all authority of the Attorney General to release aggravated felons who had entered this country illegally.[4] Thereafter, in 1990, Congress removed the Attorney General's power to release aggravated felons in exclusion proceedings whose country accepted the return of its citizens.[5] Then, in 1996, Congress removed all authority of the Attorney General to release non-aggravated-felon criminals in deportation proceedings who had entered this country illegally.[6]

Also in 1990, Congress prohibited the Attorney General from releasing aggravated felons who entered this country legally, unless the alien could affirmatively establish that his or her release did not pose a danger to the community or a flight risk.[7] In 1996, Congress enacted a similar

---

[4]    See Matter of Drysdale, 20 I&N Dec. 815, 1994 WL 232084 (BIA 1994).

[5]    See Alvarez-Mendez v. Stock, 941 F.2d 956, 962 (9th Cir. 1991).

[6]    See Galvez v. Lewis, 56 F.Supp.2d 637, 642 (E.D.Va. 1999); Matter of Valdez, Int. Dec. 3302, 1997 WL 1997 WL 80989 (BIA 1997).

[7]    See Tran v. Caplinger, 847 F. Supp. 469 (W.D. La. 1993); Matter of Drysdale, 20 I&N Dec. 815, 1994 WL 232084 (BIA 1994).

15

prohibition on the Attorney General's authority in the case of non-aggravated felon criminals who had entered this country legally.[8]

This history of legislation shows that an alien's release on bond pending his immigration proceedings has always been a privilege, not a right. The rights of aliens in removal proceedings are not like the rights of criminal defendants, but instead are significantly qualified by Congress' plenary authority over immigration, and its exclusive constitutional authority to set the conditions under which aliens may be at liberty within the United States. See Doherty v. Thornburgh, 943 F.2d 204, 208-11 (2d Cir. 1991), cert. denied sub nom. Doherty v. Barr, 503 U.S. 901 (1992).

B.    The Enactment of 8 U.S.C. §1226(c).

In 1996, Congress enacted comprehensive revisions and amendments to the INA through the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, §306(a), 110 Stat. 3009-546, 3009-626 to 627. As shown above, these revisions were made after congressional studies found that the former laws were inadequate to prevent criminal

---

[8]    Matter of Melo, Int. Dec. 3313, 1997 WL 123907 (BIA 1997); Matter of Noble, Int. Dec. 3301, 1997 WL 61453 (BIA 1997).

aliens from abusing the deportation and removal process. <u>See</u>
H.R. Rep. No. 104-469(I) (1996), <u>available in</u> 1996 WL 168955;
<u>see also</u> 142 Cong. Rec. S3329, 1996 WL 174902 (daily ed. Apr.
15, 1996) (statement of Sen. Abraham).

In enacting IIRIRA, Congress sought to ensure that the
Government could swiftly remove aliens from the United States
by identifying and removing criminal aliens from our country
promptly, and eliminating loopholes used to delay deportation.
<u>See</u> H.R. Rep. No. 104-469(I) (1996), 1996 WL 168955; <u>see also</u>
Sen. Jud. Comm. Rep. No. 104-249 at 7, 1996 WL 180026 at *15;
<u>see also</u> H. Rep. No. 104-469(I), 1996 WL 168955 at 366
(1996).[9]   Thus, Congress created a new, comprehensive,

---

[9]      These legislative reforms were made in the "national interest." H. Rep. No. 104-469(i). Congress believed that the removal of criminal aliens would benefit America and permit it to admit increased numbers of law-abiding aliens who wanted to make a contribution to this country. As the Senate Judiciary Committee explained: "[a]liens who enter or remain in the United States in violation of our law are effectively taking immigration opportunities that might otherwise be extended to others, potential legal immigrants whose presence would be more consistent with the judgment of the elected government of this country about what is in the <u>national interest</u>." <u>See</u> Sen. Jud. Committee Rep. No. 104-249 at 7 (emphasis added); <u>see also</u> H.R. Rep. No. 104-469(I) (1996), <u>available in</u> 1996 WL 168955; 142 Cong. Rec. S3329, 1996 WL 174902 (daily ed. Apr. 15, 1996) (statement of Sen. Abraham) ("Our bill would . . . mean that criminal aliens would be leaving the country and, therefore, there would be more slots in this country for aliens who want to make a contribution."); 142 Cong. Rec. S11872-01, 1996 WL 55385 (daily ed. Sept. 30, 1996) (statement of Sen Abraham) ("As I have made clear throughout consideration of the immigration bill, I draw a sharp distinction between immigrants who come to this country to make better lives for themselves and those who come to break our laws and prey upon our citizens").

statutory scheme to streamline the removal of criminal aliens. See H.R. Rep. No. 104-469(I) (1996), available in 1996 WL 168955; 142 Cong. Rec. S3329, 1996 WL 174902 (daily ed. Apr. 15, 1996) (statement of Sen. Abraham); 142 Cong. Rec. S11506, 1996 WL 565563 (daily ed. Sept. 27, 1996) (statement of Sen. Hatch).

Congress did so by: (1) requiring criminal aliens to be detained pending their removal proceedings without opportunity for bond (8 U.S.C. §1226(c)); (2) barring discretionary relief from removal for aliens convicted of aggravated felonies; (3) eliminating judicial review for criminal aliens and making the Attorney' General's decision final in most cases; and (4) imposing a 90-day time limit on the Service to remove aliens from the United States once there is a final administrative order. See 8 U.S.C. §§1101(f)(3), (8), 1158(b)(2)(B), 1226(c), (e), 1229b(a)(3), (b)(1)(B), (C), (2)(C), (D), 1229c(a)(1), 1231(a), (b)(1)(A), (C), 1231(a)(2), 1252(a)(2)(C) (Supp. II 1996). See also 142 Cong. Rec. S11506, 1996 WL 565563 (daily ed. Sept. 27, 1996) (statement of Sen. Hatch) (stating that the detention of criminal aliens "is absolutely critical if we are going to fight and win this battle with regard to illegal

18

immigration").    Consequently,   8   U.S.C.   §1226(c)   was   an

integral   part   of   this   statutory   scheme   to   swiftly   and

certainly remove criminal aliens from the United States.

C.    **The Text Of 8 U.S.C. §1226.**

As mentioned above, 8 U.S.C. §1226 instructs the Attorney

General   to   take   into   custody   most   criminal   aliens   and

precludes   him   from   releasing   them   pending   their   removal

proceedings.   It provides:

(c) Custody issues and release procedures.

(1) Custody. -   The Attorney General shall take
into custody any alien who   . . .

(A)   is   inadmissible   by   reason   of   having
committed any offense covered in section 1182(a)(2)
["Criminal and related of grounds"] of this title ,

(B)   is   deportable   by   reason   of   having
committed   any   offense   covered   in   section
1227(a)(2)(A)(ii)   [multiple   crimes   of   moral
turpitude],   (A)(iii)   ["aggravated   felony"],   (B)
["controlled   substances"],   (C)   ["certain   firearm
offenses"],   or   (D)   [espionage-related   crimes]   of
this title,

(C)   is   deportable   under   section
1227(a)(2)(A)(i) [single crimes of moral turpitude]
of this title on the basis of an offense for which
the alien has been sentence [sic] to a term of
imprisonment of at least 1 year, or

(d)   is   inadmissible   under   section
1182(a)(3)(B)   ["Terrorist   activities"]   of   this
title or deportable under section 1227(a)(4)(B)
["terrorist activities"] of this title,

\*     \*     \*     \*

> (2)  Release.  -  The  Attorney  General  may
> release  an  alien  described  in  paragraph  (1)  <u>only if</u>
> the  [alien  has  been  admitted  into  the  Witness
> Protection  Program],  . . .  and  the  alien  satisfies
> the  Attorney  General  that  the  alien  will  not  pose  a
> danger  to  the  safety  of  other  persons  or  of
> property  and  is  likely  to  appear  for  any  scheduled
> proceeding.

8  U.S.C.  §§1226(c),  (e)  (1994,  Supp.  III  1998)  (emphasis

added).[10]  8  U.S.C.  §1226(c)  had  its  own  effective  date,  and

did  not  take  effect  until  October  10,  1998,  in  order  give  the

Service  more  time  to  implement  the  statute.  <u>See</u>  <u>Galvez</u>,  56

F.Supp.  2d  641-42.  8  U.S.C.  §1226(c)  excludes  the  possibility

of  "indefinite  detention"  by  limiting  the  duration  of

detention  to  the  conclusion  of  administrative  removal

proceedings.  <u>See</u>  <u>Matter  of  Joseph</u>,  Int.  Dec.  3387,  1999  WL

271357(BIA  1999).  Once  there  is  a  final  removal  order,  the

Attorney  General  is  required  to  consider  discretionary  release

from  custody  if  the  INS  has  not  been  able  to  deport  the  alien

from  the  country  within  90  days  of  that  order.  <u>See</u>  8  U.S.C.

§§1231(a)(2),  (a)(6)  (1999);  8  C.F.R.  §§241.1,  241.3,  and

241.4  (1999).  8  U.S.C.  §1226  also  contains  its  own  judicial

---

[10]  The governing standards for the custody of non-criminal aliens pending proceedings are codified at section 236(a), 8 U.S.C. § 1226(a) (1994, Supp. III 1998).

20

review provision precluding review of the Service's custody decisions in general, but not constitutional challenges to 8 U.S.C. §1226(c) itself. <u>See</u>, <u>e.g.</u>, <u>Parra</u>, 172 F.3d at 957; <u>Galvez</u>, 56 F.Supp. 2d 643-44.

### D.   The Implementing Regulations

The implementing regulations give criminal aliens three layers of administrative review over the decision to detain them without bond under 8 U.S.C. §1226(c) pending removal proceedings. The alien initially obtains automatic custody review by the Service District Director.  If the decision is unfavorable, the alien then may seek redetermination before an Immigration Judge, and ultimately may appeal to the Board.  8 C.F.R. §§3.19(a), 236.1(d) (1999).  In 8 U.S.C. §1226(c) cases, the Service and the Board have the jurisdiction to determine whether the alien actually falls within one of the categories of criminal aliens subject to mandatory detention. <u>See</u> <u>Matter of Joseph</u>, Int. Dec. 3398, 1999 WL 339053 (BIA 1999); 8 C.F.R. §3.19(h)(2)(ii) (1999).  If the alien falls within the 8 U.S.C. §1226(c), then the Service has no authority to entertain a request for release on bond (unless

21

the alien is eligible for Witness Protection Program benefits). Id.

### E. GONZALEZ'S DETENTION PENDING APPEAL UNDER 8 U.S.C. 1226(c) COMPLIES WITH SUBSTANTIVE DUE PROCESS.

The Magistrate Judge has determined that Gonzalez's continued detention violates his substantive due process rights. The Government agrees that 8 U.S.C. §1226(c) is subject to some level of substantive due process review. See Fiallo v. Bell, 430 U.S. 787, 793 n.5 (1977); Parra, 172 F.3d at 957; Sierra-Tapia v. Reno, 1999 WL 803898 **3-4 (S.D.Ca. 1999). Even as a case of first impression, however, the Magistrate Judge's finding that Gonzalez is entitled to be free from restraint because he is a lawful permanent resident alien who has been granted relief by an Immigration Judge in spite of the provisions of 8 U.S.C. §1226(c) is erroneous.

First and foremost, Congress has "plenary power" over immigration, and this effects the standard of review. See, e.g., Reno, 507 U.S. at 305. Because of Congress' plenary power, immigration statutes like 8 U.S.C. §1226(c) are subject to highly deferential review, even when subject to a

22

constitutional challenge. See Fiallo, 430 U.S. at 792.[11]   The Supreme Court has recently directed that when Congress enacts legislation under one of its "plenary" powers, judicial deference "'is at its apogee' when reviewing congressional decisionmaking." Weiss v. United States, 510 U.S. 163, 177 (1994) (quoting Rostker v. Goldberg, 453 U.S. 57, 70 (1981)) (emphasis added).   This means that while Congress is subject to the limitations of the Due Process Clause, the standard of review must be highly deferential when reviewing a statute that comes within a plenary power. See id. Immigration detention has long been a necessary part of the deportation process, and hence it is a matter within Congress' plenary power over immigration.   See Carlson, 342 U.S. at 538; Wong Wing, 163 U.S. at 235.

Thus, because 8 U.S.C. §1226(c) was enacted pursuant to Congress' plenary authority over immigration, this Court's deference must be "at its apogee," and the Court may only review the statute under a highly deferential, rational-basis standard.   See, e.g., Parra, 172 F.3d at 958; Alikhani v.

---

[11]   The political branches' plenary power to legislate and to enforce in the area of immigration law is based on the "peculiarly . . . political" nature of the subject matter, and the potential implications for this country's relations with foreign powers. See Fiallo, 430 U.S. at 792-96 & n.4.

Fasano, 70 F.Supp.2d 1124, 1133; Sierra-Tapia, 1999 WL 803898 **4-5; Doan v. INS, 78 F.Supp.2d 1101 (S.D.Ca. 2000); Okeke v. Pasquarell, 80 F.Supp.2d 635 (W.D.Tex 2000). Cf. Reno, 507 U.S. at 305 (reviewing due process challenge to immigration detention of juvenile aliens under rational basis standard). But see Martinez, 28 F.Supp. 2d at 1281.

The substantive due process component of the Fifth Amendment requires a strict standard of review only if the liberty interest at stake is "fundamental." Reno, 507 U.S. at 300 (emphasis added). As the Supreme Court has made clear, any "[s]ubstantive due process analysis must begin with a careful description of the asserted right" because "[t]he doctrine of judicial self-restraint requires [a court] to exercise the utmost care whenever [it is] asked to break new ground in this field." Reno, 507 U.S. at 302.

As the Seventh Circuit and several district courts have held, a deportable aggravated felon does not have any "fundamental" right to be free from detention pending removal proceedings. See, e.g., Parra, 172 F.3d at 958; Alikhani, 70 F.Supp. 2d at 1133; Sierra-Tapia, 1999 WL 803898 **4-5; Galvez, 56 F.Supp.2d 637; Doan, 78 F.Supp. 2d 1101. Although

24

Gonzalez has erroneously been found not to be an alien removable for having been convicted of an aggravated felony, the Government has the right to appeal that finding and Gonzalez has no fundamental right to be free from detention pending the final outcome of his case.

The "private interest here is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country. . . ." <u>Parra</u>, 172 F.2d at 958. Gonzalez has been found removable based on his criminal convictions and his entitlement to remain in this country is still not resolved since the Government is appealing the Immigration Judge's finding that he should be allowed to remain here. Criminal aliens have "forfeited any legal entitlement to remain the United States;" they are barred from any form of discretionary relief; and they have "no constitutional right to remain at large" while litigating their removability. <u>Parra</u>, 172 F.3d at 958. Gonzalez <u>never</u> had any "right" to release on bond in immigration proceedings: this was merely a statutory privilege given to aliens by Congress, which it has now taken away for certain categories of criminal aliens.

25

A defendant in a criminal proceeding, even if the defendant is an alien, enjoys a broad panoply of substantive and procedural due process protections. Cf. INS v. Lopez-Mendoza, 468 U.S. 1032 (1984)(discussing differences between criminal proceedings and deportation proceedings). He is presumed innocent, In re Winship, 397 U.S. 358 (1970), has a right to counsel, Gideon v. Wainwright, 372 U.S. 335 (1963), a right to trial by jury, United States v. Gaudin, 515 U.S. 506 (1995), a right to confrontation, Lee v. Illinois, 476 U.S. 530 (1986), and many other protections. Gonzalez was afforded all of those rights when he was convicted twice for possession of controlled substances. It follows that Congress does not violate a criminal alien's substantive due process rights by requiring his detention through the completion of immigration proceedings when the alien has been afforded substantive and procedural protections in the criminal proceeding itself and that criminal conviction is the basis for the detention. Furthermore, Congress had legitimate reasons for requiring the detention of such criminal aliens and so 8 U.S.C. §1226(c) is constitutional.

26

The enactment of 8 U.S.C. §1226(c) is a reasonable exercise of congressional power, as it clearly furthers a legitimate governmental purpose. This provision seeks to prevent clearly deportable and removable criminal aliens from absconding or committing further criminal acts during proceedings to effect their removal. Gonzalez has already demonstrated that is a recidivist. Preventing danger to the community and flight have long been considered legitimate regulatory goals. See, e.g., United States v. Salerno, 481 U.S. 739, 748-49 (1987); Schall v. Martin, 467 U.S. 253, 251 (1984); Bell v. Wolfish, 441 U.S. 520 (1979); Carlson, 342 U.S. at 534. These goals have been paramount among the immigration enforcement concerns of Congress and the Attorney General over the past decade, with mounting emphasis in the past three years as the problems of widespread recidivism and abscondment have come increasingly to light. Carlson, 342 U.S. at 533 ("Detention is necessarily a part of this deportation procedure. Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings."). Gonzalez's offenses, committed in close proximity to each other are the

27

type of act that Congress wanted to prevent when it enacted 8 U.S.C. §1226(c).

Thus, Gonzalez -- who is a deportable as a drug offender and, arguably as an alien convicted of an aggravated felony -- does not have any "fundamental" right to be free while the Government appeals the decisions of the Immigration Judge. Since that is the case, substantive due process requires "no more than a 'reasonable fit' between governmental purpose [behind 8 U.S.C. §1226(c)] . . . and the means chosen to advance that purpose." Alikhani, 70 F.Supp. 2d at 1133 quoting Reno, 507 U.S. at 305; see also Parra, 172 F.3d at 958; Sierra-Tapia, 1999 WL 803898 **4-5; Okeke, 80 F.Supp.2d 635. But see Martinez, 28 F.Supp. 2d at 1281; Galvez, 56 F.Supp.2d 637; Reyes, 73 F.Supp. 2d at 657 (subjecting 8 U.S.C. §1226(c) to U.S. v. Salerno, 481 U.S. 739 (1987) standard of review).

As the Seventh Circuit, and several district courts have found, 8 U.S.C. §1226(c) satisfies this test and is constitutional. See, e.g., Parra, 172 F.3d at 958; Sierra-Tapia, 1999 WL 803898 **4-5; Okeke, 80 F.Supp.2d 635; Alikhani, 70 F.Supp. 2d at 1133. It rationally furthers the legitimate government purposes of streamlining the removal of

deportable criminal aliens, eliminating any opportunities for delay, correcting the past failures of release on bond, ensuring public safety, and preventing criminal aliens from absconding before they can be removed.  Cf. Parra, 172 F.3d at 958; Sierra-Tapia, 1999 WL 803898 **4-5; Okeke, 80 F.Supp.2d 635; Alikhani, 70 F.Supp. 2d at 1133.


      **F.  GONZALEZ'S DETENTION PENDING APPEAL UNDER 8 U.S.C. §1226(c) SATISFIES PROCEDURAL DUE PROCESS.**

The Magistrate Judge has determined that Gonzalez's continued detention also violates his procedural due process rights. Again, as already shown above, the Supreme Court has recently stated that when Congress legislates within one of its plenary powers (as it has done in enacting 8 U.S.C. §1226(c)), judicial deference must be "at its apogee."  Thus, in the case of immigration detention, which is an integral part of Congress' plenary power over immigration, all that is required to satisfy procedural due process is "some level of individualized determination," i.e., an "individualized" administrative determination that (1) there is "reason to believe" the alien is deportable and (2) the alien comes

within the detention provisions of the law. <u>See</u> <u>Reno</u>, 507 U.S. at 313-14.  There is good reason to believe that Gonzalez is removable and he does fall under one of the provisions regarding detention.

As shown above, the regulations implementing 8 U.S.C. §1226(c) satisfy this test.  Under those regulations, a criminal alien like Gonzalez has three opportunities for an individualized assessment as to whether there is reason to believe he is deportable and comes within the provisions of 8 U.S.C. §1226(c).  First, a district director makes this determination, and then an alien has the opportunity for review before an immigration judge, and then to the Board for further individualized review of the legality of detention. <u>See</u> 8 C.F.R. §§3.19(a), (b), (h)(2)(i)(D), (h)(2)(ii), 236.1(c)(10) & (d)(3) (1998). The Government interests here outweigh Gonzalez's qualified liberty interests.  He is removable for having been convicted of an offense that violates a law relating to a controlled substance.  The issue of whether Gonzalez has been convicted of an aggravated felony, and his ultimate eligibility for the relief granted by the Immigration Judge, has not been finally resolved. Gonzalez

30

has not challenged his alien status or the fact of his conviction.  <u>See</u> <u>Parra</u>, 172 F.3d at 958; <u>Reyes</u>, 73 F. Supp. 2d at 658; <u>Galvez</u>, 56 F.Supp.2d at 648-48. <u>Cf</u>. <u>Diaz-Zaldierna</u>, 43 F.Supp. 2d 1121.

Therefore, as the Seventh Circuit and several district courts have held, to the extent that procedural due process is an issue, detention without bond for deportable criminal aliens like Gonzalez is constitutional. <u>Parra</u>, 172 F.3d at 958; <u>Reyes</u>, 73 F. Supp. 2d at 658; <u>Galvez</u>, 56 F.Supp.2d at 648-48; <u>Diaz-Zaldierna</u>, 43 F.Supp. 2d 1121.  <u>Contra</u> <u>Martinez</u>, 28 F.Supp.2d at 1282.

Based on the foregoing, Gonzalez's continued detention is not unconstitutional imprisonment and does not violate his due process rights.


**III.   THE MAGISTRATE JUDGE INCORRCTLY CONCLUDED THAT GONZALEZ'S CONTINUED DETENTION VIOLATED HIS EQUAL PROTECTION RIGHTS.**

The basic principle of an equal protection violation is that similarly situated people are treated differently.  The Magistrate Judge found that Gonzalez's continued detention

31

violated his equal protection rights, characterizing his detention as "disparate treatment" and finding that his imprisonment constitutes a "classic example of an equal protection violation." The Magistrate Judge did not elaborate on his finding other than to say that further explanation was unnecessary based on his disposition of the case on due process grounds, finding Gonzalez's equal protection claims at least as strong as his due process claims. The Magistrate Judge failed to identify the class of persons to which Gonzalez belonged or how he was being treated disparately. So, we are left to speculate.

The Supreme Court has repeatedly stressed the paramount authority of the executive and legislative branches of our national government with respect to immigration matters, and the correspondingly limited role of the judiciary. See, e.g., Fiallo v. Bell, 430 U.S., 787, 792 (1977); Mathews v. Diaz, 426 U.S. 67, 81-82 (1976); Harisiades v. Shaughnessy, 342 U.S. 580, 588-89 (1952); Fonseca-Leite v. INS, 961 F.2d 60, 62 (5th Cir. 1992). Congress' exercise of such power, if predicated on a rational basis, may distinguish between classes of aliens and confer benefits on one or more classes that are not

32

available to others. <u>See</u> <u>Mathews</u>, 426 U.S. at 81-84.
Classifications which distinguish among similarly situated
groups of aliens must be upheld if supported by "a facially
legitimate and bona fide reason." <u>Fiallo</u>, 430 U.S. at 794. It
is well-established that the government has no obligation to
produce evidence to sustain the rationality of a statutory
classification. <u>Heller v. Doe</u>, 509 U.S. 312, 319 (1993). A
classification in a statute bears a "strong presumption of
validity," and those attacking the rationality of the
legislative classification have "the burden to negate every
conceivable basis which might support it," whether or not the
basis has a foundation in the record. <u>Id</u>. at 320; <u>see also</u>
<u>FCC v. Beach Communications, Inc.</u>, 508 U.S. 307, 314-15
(1993).

Gonzalez is not part of the class of aliens who are
lawful permanent residents of the United States because he has
been convicted of, at a very minimum, possession of a
controlled substance (cocaine) and is removable for that
offense. Additionally, a determination of whether either one,
or both, of his drug possession convictions meets the
definition of aggravated felony has yet to be finally

determined.  As a consequence, Gonzalez may also be removable for having been convicted of an aggravated felony, a determination that may take away his lawful permanent resident status and require his removal from the United States. Therefore, it is clear that Gonzalez does not fall into the class of persons who are lawfully admitted for permanent residence in the United States.

Nor is Gonzalez in the class of lawful permanent resident aliens granted relief after being found removable.  There is a significant question whether Gonzalez was even eligible to apply for that relief after having been convicted of an aggravated felony.  The Immigration Judge erred by failing to pretermit Gonzalez's cancellation application.  That error is on appeal to the Board and the Immigration Judge's decisions are very likely to be reversed by the Board.

On the contrary, there is a very rational basis for Gonzalez's continued detention.  He has been convicted of two drug possession offenses and is removable for each or them. Whether one or both of these offenses can be classified as an aggravated felony is on appeal.  Although he may be treated disparately relative to other lawful permanent resident aliens

34

found removable, but granted cancellation, Gonzales is not in the same class. He is in the same class as other criminal aliens who do not have final orders entered in their cases. To the extent the mandatory detention of those individuals is constitutional, then he is being treated similarly. <u>See Parra</u>.

The Magistrate Judge did rely on a case cited by Gonzalez in which an alien who had been granted relief was released while the government appealed the finding of the Immigration Judge. <u>Tiv, et al. v. Reno</u>, 2000 WL 246252 (N.D. Ill. 2000). Although at first blush it appears that <u>Tiv et al.</u>, specifically the case of Juan Mireles, is on point, further analysis is required. <u>Tiv</u> does **NOT** say that a removable lawful permanent resident who has been granted cancellation is **NOT** subject to the provisions of 8 U.S.C. §1226(c) and **MUST** be released pending the outcome of the Service appeal.

The implementation of 8 C.F.R. §3.19(i)(2) (the automatic stay of the bond redetermination) is on a case-by-case basis and is subject to significant agency internal review before it is allowed to be utilized. In Gonzalez's case, it was determined by various levels of the Service that a stay should

35

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on counsel at the following address, by depositing a copy of it in the United States mail, first class postage prepaid, to:

Lisa S. Brodyaga, Esquire
Refugio Del Rio Grande
17891 Landrum Park Rd.
San Benito,  TX  78586

on this the 8th day of June, 2001.

Lisa M. Putnam
Special Assistant U.S. Attorney

39