

United States District Court
Southern District of Texas
FILED

JUN 1 1 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

RAFAEL GONZALEZ-NOYOLA          )
                                )
v.                              )    C.A. No. B-01-058
                                )
E.M. TROMINSKI, and             )
JOHN ASHCROFT.                  )
_____ )

**PETITIONER'S REPLY TO RESPONDENTS' OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Comes Petitioner, through the undersigned, and respectfully files the instant Reply to Respondents' Opposition to the Magistrate Judge's Report and Recommendation, (hereinafter referred to as Respondents' "Opposition" and cited, by page, as (OPP:__)).

## I. RESPONDENTS' POSITION

In their Opposition, (OPP:2-12), Respondents (incorrectly) assert that, in determining whether preliminary relief is warranted, the question of Mr. Gonzalez' likelihood of success on the merits is a function of his chances of success before the BIA. In fact, the pertinent test is the likelihood that he will prevail in the causes of action which he has raised before this Court.

Second, Respondents attempt, for the first time, (OPP:12-31), to address Petitioner's argument, and the conclusion of the Magistrate Judge, that §1226(c) is unconstitutional **as applied to Petitioner**, a lawful permanent resident ("LPR"), to whom the Immigration Judge has granted relief from deportation, and, after a hearing which addressed the questions of whether he is a threat to society, and/or is likely to abscond, ordered his release on recognizance.

Finally, Respondents also attempt to address, for the first time, (OPP:31-37), Mr. Gonzalez' Equal Protection claim.

## II. NEW ISSUES PRESENTED BY RESPONDENTS' OPPOSITION

**A. THE QUESTION OF MR. GONZALEZ' LIKELIHOOD OF SUCCESS ON THE MERITS REFERS TO THE INSTANT CASE, NOT PROCEEDINGS BEFORE THE BIA.**

**B. IN ADDRESSING CONGRESSIONAL POWERS OVER NON-CITIZENS, RESPONDENTS IGNORE THE CRUCIAL FACT THAT THE SUPREME COURT, AND THE FIFTH CIRCUIT, HAVE REPEATEDLY HELD THAT LAWFUL PERMANENT RESIDENTS SUCH AS MR. GONZALEZ ARE ENTITLED TO FULL DUE PROCESS PROTECTIONS.**

**C. IN ASSERTING THAT THEY MUST "SPECULATE" AS TO THE BASIS FOR THE MAGISTRATE'S FINDING THAT MR. GONZALEZ' DETENTION ALSO DEPRIVES HIM OF EQUAL PROTECTION, RESPONDENTS IGNORE THE CONTEXT IN WHICH THAT FINDING WAS MADE, I.E., PETITIONER'S SHOWING THAT INS HAS RELEASED OTHER LPRs WHOSE ELIGIBILITY FOR DISCRETIONARY RELIEF WAS CONTESTED WHILE THEIR CASES WERE BEING LITIGATED BEFORE THE BIA.**

## III. ARGUMENT

**A. THE QUESTION OF MR. GONZALEZ' LIKELIHOOD OF SUCCESS ON THE MERITS REFERS TO THE INSTANT CASE, NOT PROCEEDINGS BEFORE THE BIA.**

Respondents first challenge the Magistrate Judge's finding that Mr. Gonzalez has a substantial likelihood of success on the merits.[1] (OPP:2-12). However, in so doing, Respondents address his chances of success before the BIA, rather than the likelihood that he will prevail in his constitutional challenges, which challenges, as previously shown, are not before the BIA, and cannot be entertained by that body.[2] As urged by Respondents, (OPP:2) (emphasis added):

---

[1] Where a serious legal question is involved, this is satisfied by "a substantial case on the merits." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981), *cert. den.*, 460 U.S. 1042 (1982).

[2] *See, e.g., Matter of Ruiz-Massieu*, I.D. 3400 (BIA 1999) (The BIA cannot rule on the constitutionality of the Act).

2

> Therefore, we must review the Immigration Judge's finding that Gonzalez has not been convicted of an aggravated felony, was statutorily eligible to apply for relief, and a grant of that relief was warranted *to determine if Gonzalez has a substantial likelihood of success before the Board.*

This is incorrect. In considering whether to grant a preliminary injunction, the Court must determine the likelihood of ultimate success in the causes of action before the Court. *See, for example, University of Texas v. Camenisch*, 101 S.Ct. 1830, 1831 (1981) (To suggest that the decisions below, to the extent that they considered respondent's likelihood of success on the merits in granting a preliminary injunction, were tantamount to decisions on the underlying merits and thus that the preliminary-injunction issue is not truly moot, improperly equates "likelihood of success" with "success" and ignores the significant procedural differences between preliminary and permanent injunctions). The issue before the BIA, of whether Petitioner has been convicted of an aggravated felony, is not now, and, under current Fifth Circuit precedent, will never come before this Court. *Max-George v. Reno,* 205 F.3d 194 (5th Cir. 2000) (in review of removal order, even constitutional issues are determined in the first instance by the Fifth Circuit)

Therefore, the issue is whether Mr. Gonzalez has presented a "substantial case on the merits" of a serious legal issue, or whether he has shown a "likelihood" of such success, in the case of less "serious" issues. It is respectfully urged that he has met, and indeed exceeded, both standards.

**B. IN ADDRESSING CONGRESSIONAL POWERS OVER NON-CITIZENS, RESPONDENTS IGNORE THE CRUCIAL FACT THAT THE SUPREME COURT, AND THE FIFTH CIRCUIT, HAVE REPEATEDLY HELD THAT LAWFUL PERMANENT RESIDENTS SUCH AS MR. GONZALEZ ARE ENTITLED TO FULL DUE PROCESS PROTECTIONS.**

Both the Supreme Court, and the Fifth Circuit, have repeatedly held

that lawful permanent residents, such as Mr. Gonzalez, are entitled to Due Process. *See, e.g., Molina v. Sewell,* 983 F.2d 676 (5th Cir. 1993), and the cases cited therein. It is equally undisputed that, once there is a final order of removal (or deportation), against a permanent resident, the person's status reverts to that of a non-permanent resident. *Rivera v. INS,* 810 F.2d 540 (5th Cir. 1987). *See also, Zadvydas v. Underdown,* 185 F.3d 279 (5th Cir. 1999) (involving a former lawful permanent resident under a final order of deportation which could not be immediately effectuated).

Respondents cite a great many cases in support of their claim that the mandatory detention provisions of 8 U.S.C. §1226(c) do not offend either Substantive or Procedural Due Process. However, none of these cases addresses the issue *as applied to a lawful permanent resident who has been granted discretionary relief, and ordered released on recognizance, by an Immigration Judge.*

Furthermore, Respondents frequently overstate the holdings of the cases they cite. For example, Respondents cite *Carlson v. Landon*, 342 U.S. 524, 537-41 (1952) (OPP:13), as "upholding mandatory detention of aliens without bond based on membership in communist party." This is misleading. *Carlson* was not a "mandatory detention" case, in the same manner as the case at bar. Rather, the issue was whether it was *an abuse of discretion* for the Attorney General to deny bail solely on the basis of membership in the Communist Party. As the Court noted therein, *id*. at 540:

> The Government does not urge that the Attorney General's discretion is not subject to any judicial review, but merely that his discretion can be overturned only on a showing of clear abuse.

After lengthy discussion, the Court concluded that the Attorney General had not abused his discretion in the cases under

4

consideration. *Id.* at 543-44 (footnote omitted) (emphasis added):

> Specifically when dealing with alien Communists, as in these cases, the legislative standard for deportation is definite. See notes 3 and 4, supra. *In carrying out that policy the Attorney General is not left with untrammeled discretion as to bail. Courts review his determination. Hearings are had, and he must justify his refusal of bail by reference to the legislative scheme to eradicate the evils of Communist activity.* The legislative judgment of evils calling for the 1950 amendments to deportation legislation is set out in the introductory sections of the Subversive Activities Control Act. So far as pertinent to these proceedings, the new legislation was designed to eliminate the subversive activities of resident aliens who seek to inculcate the doctrine of force and violence into the political philosophy of the American people. To this end provision was made for the detention and deportation of certain noncitizens, including members of the Communist Party. When in the judgment of the Attorney General an alien Communist may so conduct himself pending deportation hearings as to aid in carrying out the objectives of the world communist movement, that alien may be detained.

Nor was mandatory detention involved in *U.S. ex rel Barbour v. INS*, 491 F.2d 573 (5th Cir. 1974). Rather, the Court affirmed, (on different grounds), a determination by the trial court that the BIA had not *abused its discretion* in ordering that the petitioner be held without bond. As summarized therein, *id.* at 577:

> After viewing the information forwarded to this Court with regard to national security, we hold that the district court was wrong in its belief that the Board erred in finding that Barbour was a security risk. Thus we affirm the district court on the ground that Barbour represents a threat to the security of this country.

Respondents have cited no case, and none is known to Petitioner, where any federal court has upheld the constitutionality of the

5

"mandatory detention" provisions of 8 U.S.C. §1226(c) under facts similar to those in the case at bar, *i.e.*, as applied to an LPR to whom an Immigration Judge has granted discretionary relief and ordered that proceedings be terminated, and that the immigrant be released on recognizance. Nor are any cases cited, or known, where INS exercised its discretion under 8 C.F.R. §3.19(i), to obtain an "automatic stay" of an Immigration Judge's order releasing an LPR to whom relief had been granted, pending an appeal by INS.

> 1. IN ASSERTING THAT PETITIONER LACKS A "FUNDAMENTAL LIBERTY INTEREST" WHICH WOULD IMPLICATE SUBSTANTIVE DUE PROCESS, RESPONDENTS RELY LARGELY ON CASES WHEREIN IT WAS UNDISPUTED THAT THE RESIDENT WOULD ULTIMATELY BE DEPORTED

With the exception of *Okeke v. Pasquarell*, 80 F.Supp. 635 (W.D.Tx. 2000), the cases cited by INS which found 8 U.S.C. §1226(c) to be constitutional involved facts similar to those in *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999), where the petitioner was undeniably an aggravated felon, and ineligible for any form of relief from deportation.[3] As the Court noted therein, *id*. at 958:

> Parra's legal right to remain in the United States has come to an end. An alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs.

---

[3] *See*, Petitioner's Points and Authorities in support of his petition for writ of habeas corpus, at page 2, n.1, for a discussion of the cases holding that mandatory detention is **not** unconstitutional, all but one of which, (*Okeke*), involved immigrants for whom there was no relief from removal, and who were therefore only attempting to "postpone the inevitable."

Mr. Gonzalez does not have "the keys in his pocket." The appeal before the BIA is not his to withdraw, and there is no order of removal to execute. He cannot "end[] his detention immediately." He would first have to wrest jurisdiction over his case from the BIA, and return it to Judge Ayala. He would then have to convince Judge Ayala to reopen proceedings, and order his removal. If this were simple, and he had "the keys in his pocket," in his current state of desperation, Mr. Gonzalez would have done so long ago!

Interestingly, the Seventh Circuit appears to have read §1226(c) in a manner which would not apply to Petitioner. As the Court noted, *id.*, (italicized emphasis in original) (bold emphasis added):

> Persons subject to § 1226(c) have forfeited any *legal* entitlement to remain in the United States and have little hope of clemency. (One is tempted to say "no" hope, but life is full of surprises, and a last-minute amendment of the immigration laws or change in policy has kept many an immigrant in this country. For current purposes "little" hope will do.) **Before the IIRIRA bail was available to persons in Parra's position as a corollary to the possibility of discretionary relief from deportation**; now that this possibility is so remote, so too is any reason for release pending removal.

This language supports Petitioner's claim that the possibility of being released on bond, following an individualized hearing, is a constitutional "corollary" of his continuing status as a lawful permanent resident, whose entitlement to discretionary relief may be in doubt, but is far from having been definitively settled.[4]

---

[4] Mr. Gonzalez does not claim, and the Magistrate Judge did not find, an absolute **entitlement** to bond, as one might infer from Respondents' Opposition. *See, for example*, (OPP:22):

> [T]he Magistrate Judge's finding that Gonzalez is entitled to be free from restraint because he is a lawful permanent resident who has been granted relief by an

7

This is a "serious" legal question within the meaning of *Ruiz v. Estelle, supra*. And the fact that the vast majority of the federal courts which have addressed it have ruled in favor of the immigrant certainly mandates a finding that Mr. Gonzalez has a "substantial case on the merits." *Id*. INS has not contested any other element required for preliminary relief. Thus, Mr. Gonzalez is entitled to the relief he seeks, as was recommended by the Magistrate Judge.

**C. IN ASSERTING THAT THEY MUST "SPECULATE" AS TO THE BASIS FOR THE MAGISTRATE'S FINDING THAT MR. GONZALEZ' DETENTION ALSO DEPRIVES HIM OF EQUAL PROTECTION, RESPONDENTS IGNORE THE CONTEXT IN WHICH THAT FINDING WAS MADE, I.E., PETITIONER'S SHOWING THAT INS HAS RELEASED OTHER LPRs WHOSE ELIGIBILITY FOR DISCRETIONARY RELIEF WAS CONTESTED WHILE THEIR CASES WERE BEING LITIGATED BEFORE THE BIA.**

Finally, Respondents reject, as vague, the finding of the Magistrate Judge that, as applied herein, mandatory detention also violates Equal Protection. This claim was explained in Petitioner's Points and Authorities, at pp. 7-8:

> In addition, Mr. Gonzalez has an exceptionally strong Equal Protection claim. As previously noted, the undersigned has located **no** case where a court upheld a decision by INS to continue to detain a lawful permanent resident, allegedly under the "mandatory detention" provisions of 8 U.S.C. §1226(c), **after** that person had been granted discretionary relief by an Immigration Judge, and in the face of an Order by that Immigration Judge that he be released on his own recognizance. In fact, the undersigned has located no case where INS

---

> Immigration Judge in spite of the provisions of 8 U.S.C. §1226(c) is erroneous.

This ignores the key fact that, following an individualized hearing to address whether Mr. Gonzalez was a danger to society, or likely to abscond, the Immigration Judge ordered his release on personal recognizance, and that INS then invoked its unreviewable discretion under 8 C.F.R. §3.19(i) to obtain an automatic stay of said order.

8

continued to physically detain the immigrant under such circumstances. To the contrary, in *Tiv et al v. Reno, supra,* at *3, [5] it was noted that INS had released Juan Mireles, one of the petitioners therein, an LPR who had been held pursuant to mandatory detention, after he was granted cancellation of removal by Immigration Judge, while INS appealed IJ's ruling that he had not been convicted of an aggravated felony.[6] This is exactly the procedural posture of the case at bar, and presents a classic example of an Equal Protection violation.

Although Respondents assert, (OPP:21-2), that INS "has no authority to entertain a request for release on bond" of anyone subject to the provisions of §1226(c), except for witness protection, it was conceded at argument before the Magistrate Judge that INS *does* have the discretion to accede to an Order of an Immigration Judge, such as was issued herein, ordering conditional release. And, as seen in *Tiv v. Reno, supra,* INS has not only permitted the release of an LPR similarly situated to Mr. Gonzalez,[7] but has also released an immigrant who was undeniably subject to §1226(c), whose claim of eligibility for relief had been rejected by the Immigration Judge, and who was appealing that determination to the BIA.

There can be little doubt but that it violates both Substantive and Procedural Due Process to vest custody determinations in the unreviewable discretion of the INS. *See, e.g., Richardson v. Reno,* 162 F.3d 1338,1363 (11th Cir. 1998) (LPR has "weighty" liberty interest in procedures for adjudicating bond request). *See also,*

---

[5] 2000 WL 246252 (N.D.Ill. 2000).

[6] In that case, INS also released Mr. Vang, who was appealing the Immigration Judge's ruling that he was **ineligible** for any relief from deportation.

[7] *I.e.*, an LPR who had been granted relief by an Immigration Judge, over INS' objection that he was an aggravated felon, and therefore ineligible for such relief.

9

*Carlson v. Landon, supra,* "The Government does not urge that the Attorney General's discretion is not subject to any judicial review, but merely that his discretion can be overturned only on a showing of clear abuse."

And for Respondents to urge that Mr. Gonzalez is subject to mandatory detention under §1226(c), even as they exercise their (unreviewable) discretion to release other LPRs with identical, and even lesser, claims of entitlement to remain in the United States, also violates Equal Protection.

It is therefore respectfully submitted that Petitioner has demonstrated clear entitlement to immediate preliminary relief, and that the Report and Recommendation of the Magistrate Judge should be adopted in its entirety. He further urges that a Preliminary Injunction issue forthwith, requiring Respondents to comply with the Order of Immigration Judge David Ayala that he be released on recognizance, pending INS' appeal of the Judge's Order granting cancellation of removal, and terminating removal proceedings.

Respectfully Submitted,

Lisa S. Brodyaga,                          and     Thelma O. Garcia,
17891 Landrum Park Road                            301 E. Madison
San Benito, TX 78586                               Harlingen, Texas 78550
(956) 421-3226                                     (956) 425-3701
Texas Bar: 03052800
Fed. I.D. 1178

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was personally delivered to the office of Lisa Putnam, SAUSA, 1709 Zoy St., Harlingen, Texas, this 11th day of June, 2001.

10